(No. 36169.—▉▉▉▉▉▉▉

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT W. WALSH, Plaintiff in Error.

*Opinion filed September 27, 1963.*

Lee C. Korbakes, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Elmer C. Kissane and James R. Thompson, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Solfisburg delivered the opinion of the court:

The defendant Robert W. Walsh was indicted jointly with Robert Fuhri, Daniel Pacanowski and William Schenkel in the criminal court of Cook County for the murder of one Peter Muktepavels, while they were en-

gaged in robbery of Muktepavels. Robert Walsh pleaded not guilty to the offense charged, was tried separately by a jury, found guilty of murder and sentenced to imprisonment in the penitentiary for a term of 35 years. He prosecutes this writ of error from that judgment.

John J. Majerski, a witness for the People, testified that he had been sitting in front of his tavern in Chicago on the morning of July 25, 1959, at approximately 1:00 A.M. when he observed Walsh and Schenkel emerge from an automobile and walk towards the deceased, Peter Muktepavels, whereupon the deceased crossed to the opposite side of the street and the youths followed. The automobile thereafter followed in the direction of the course taken by the deceased and the two young men until they turned on a side street at which time the witness could no longer observe them. The deceased was found dead on the morning of July 25, 1959, on the side street with his head on the curbstone, bruises and blood on his face, and his shirt pocket and one front pants pocket turned out. Sixty dollars was found in the deceased's back pants pocket.

On December 7, 1959, police arrested Walsh, Pacanowski, and Schenkel. Detective Kelleher testified that Walsh had stated to him that he and Schenkel had gotten out of the car, that Schenkel had put his arm on the man, gotten him down and gone through one pocket and that he had gone through the other and gotten around 80 or 90 cents. He also stated that Walsh had told him that the four defendants then bought beer with the change they had gotten. In a signed statement given by Walsh he stated that the four defendants had been riding down the street and saw the deceased, that Fuhri said, "Let's get him", and that Walsh had stated that he didn't want to get him because he lived only a couple blocks away. They stopped anyway, and Schenkel said, "Let's get him", so Walsh and Schenkel got out of the car, Schenkel grabbing the deceased and Walsh putting his hand around his mouth and hitting him

in the face with his fist. Walsh then stated that both he and Schenkel started to kick the deceased, that Schenkel had gone through the deceased's pockets, but that Walsh did not know whether he had gotten any money.

At the trial Walsh denied attempting to rob the deceased and denied kicking him, but did admit that he struck the deceased with his fist.

Pacanowski, Schenkel and Fuhri all testified on Walsh's behalf and substantiated the contention that the four had been drinking excessively before the assault. On cross-examination, however, Pacanowski testified that the youths were talking about "getting some guy with money."

As there was evidence that the four had been drinking heavily before the incident, Walsh offered in his defense the theory that his intoxication rendered him incapable of forming the specific intent requisite to commission of the crime.

Attorney Arthur Ahern was retained by Robert Walsh, Robert Fuhri and Daniel Pacanowski. He filed a written petition for severance requesting that each of the defendants be granted a separate trial on the grounds that the defense of each of the four defendants was repugnant and inconsistent with that of the others, and that he could not properly and ethically defend all the parties at the same trial without disclosing information received from the individual defendants which may or may not be detrimental to the defense of the others. The petition was allowed and the defendants were granted separate trials. Attorney Ahern was counsel of Robert Walsh's own choosing.

The defendant seeks a reversal of his conviction because his attorney also represented conflicting interests of adverse litigants, which made it difficult, if not impossible, for his attorney to effectively represent him. He also contends that his guilt was not proved beyond a reasonable doubt in that his intoxication rendered him incapable of forming the specific intent requisite to the commission of

the crime, and that there was insufficient evidence of an intent to rob.

It is clear that under the constitution and laws of Illinois a defendant has an absolute right to be represented by counsel of his own choice, and he should be given full opportunity to select and employ his own attorney. (*People v. Burson,* 11 Ill.2d 360; *People v. Cohen,* 402 Ill. 574.) It is also true that an attorney ought not represent conflicting interests. In the case at bar the defendant Walsh personally selected his trial attorney and knew that such attorney represented two of his co-defendants. As a general rule it is not the duty of the court to advise or exercise any authority or control over the selection of counsel by a defendant who was able and does employ counsel of his own choice. (*People v. Friedrich,* 20 Ill.2d 240.) In the *Friedrich* case we reversed a conviction where the trial court compelled a defendant to discharge counsel of his own choice because such counsel also represented a co-defendant. We held that such action deprived the defendant of the right to counsel.

In *People v. Gerold,* 265 Ill. 448, 477, cited by defendant, we held that it was error to permit an attorney to prosecute a criminal case against a defendant that he had previously represented in transactions involved in the indictment. In *Glasser v. United States,* 315 U.S. 60, 86 L. ed. 680, also relied upon by defendant, the United States Supreme Court held that by appointing Glasser's attorney as counsel for a co-defendant over Glasser's objections, Glasser's constitutional right to counsel of his own choosing had been violated. We do not consider that either of these cases supports defendant's contention.

It appears that the defendant Walsh and his co-defendants hired the same trial counsel at approximately the same time. They were all aware of the mutual employment and counsel realized the diversity of interest that compelled the motion for severance, which was granted.

It does not follow that the conflict of interest that might arise at a single trial would necessarily arise at separate trials. We have examined the entire record in this cause and we see no indication that trial counsel did not fully represent the interests of his defendant.

Defendant seems to find prejudice implicit in the fact that other persons involved in this occurrence received lighter sentences upon separate trials. The records in these trials are not before us and therefore can have no bearing on this case. We, therefore, find that the trial court was under no duty, and indeed had no right, to prevent the defendant from proceeding to trial with counsel of his own choosing.

Defendant next contends that the evidence of his intoxication was sufficient to overcome the State's proof of the specific intent requisite to the crime. In *People* v. *Freedman,* 4 Ill.2d 414, at page 419, we stated, "While voluntary intoxication affords no excuse for a crime, an offense which is by law made to depend upon the state or condition of the mind of the accused cannot be committed by one who is incapable of forming the specific intent." In that case, the evidence showed the defendant to have been intoxicated. There was testimony that he had visited 17 taverns and had much to drink, that a restaurant owner and the complaining witness had seen him intoxicated, but we went on to state, "While it is evident from the record that defendant was intoxicated, we think that under the facts and circumstances shown the determination of whether he was so intoxicated as to not know what he was doing and lacked a mind sufficient to form an intent, was for the jury." We would not in that case upset the jury's findings. A strong element in our holding was the clear recollection by the defendant of the crime committed which indicated a mind capable of forming the specific intent required. In the instant case, the defendant also gave a clear account of the crime and related in specific detail

the statements and actions of the parties involved. While there was evidence that defendant was intoxicated, the jury was fully instructed on this defense. We think that the determination of whether he was so intoxicated as to be incapable of forming the specific intent was within the province of the jury and that their decision in light of the facts and circumstances should not be disturbed.

The defendant also insists that there was insufficient evidence to show an intent to rob which is an essential element of the crime. The defendant testified that while the four boys were riding in the car William Schenkel said, "Let's see if he has got any money", referring to the deceased. Schenkel got out of the car and attacked the man and when the deceased appeared to be winning the fight, the defendant struck the deceased, knocking him to the ground. In his statement to the police the defendant stated that he had obtained 80 or 90 cents from the pocket of the deceased, and that he kicked the deceased because "we were mad because we only got 80 or 90 cents off of him." Daniel Pacanowski, one of the other defendants stated that on the night in question they had been riding around and the subject came up about "getting some guy with money", that shortly thereafter they had stopped the car and Walsh and Schenkel had gotten out and attacked the deceased. The facts also show that when the deceased was found his shirt pockets and one front pants pocket were turned inside out. We believe the evidence was more than sufficient to prove the specific intent to rob.

Upon a review of the entire record we find that the defendant received a fair trial and was proved guilty of the crime charged beyond a reasonable doubt. The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*