(No. 37953.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BENEDICT DiGERLANDO, Plaintiff in Error.

*Opinion filed March 18, 1964.—Rehearing denied May 19, 1964.*

John J. Cogan, and Bellows, Bellows, and Magidson, both of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Elmer C. Kissane and James R. Thompson, Assistant State's Attorneys, of counsel,) for the People.

Per Curiam: Defendant, Benedict DiGerlando, was convicted of the crime of murder by a jury in the criminal

court of Cook County and sentenced to the penitentiary for his natural life.

Defendant and Grace Valtierra, Robert Chan and Danny Escobedo were jointly indicted for shooting Manuel Valtierra in the back and killing him by a bullet as he entered the rear door of the premises on January 20, 1960, at 3703 West Lexington in Chicago where he lived in a second-floor apartment with his wife, said Grace Valtierra, and their five children. Grace was stepmother of three of the children and sister of Danny Escobedo.

It was contended that prior to January 20, 1960, the defendant agreed and conspired with Grace Valtierra, wife of decedent, Robert Chan and Danny Escobedo, brother of Grace Valtierra, to murder Manuel Valtierra; that on the day before the murder, defendant, Robert Chan and Danny Escobedo were together and made phone calls to Grace Valtierra and went in a car to the vicinity where Manuel Valtierra lived; that some money was given to the three men in the car, defendant, Escobedo and Chan; and that on January 20, 1960, Chan pointed out decedent to defendant who shot at him five times with a .38 revolver.

On January 30, 1960, defendant was arrested at his home. This was some 10 days after the shooting. The other three parties involved were also arrested that same night. Arraignment was held February 26, 1960, at which time confessions made by the respective defendants, DiGerlando, Chan and Escobedo were furnished them. DiGerlando was furnished a copy of a 6-page written statement made by him to the State's Attorney's office, a copy of a 2-page signed confession he gave police, and a list of witnesses present when he made an oral confession. All defendants entered pleas of not guilty. On March 28, 1960, a list of witnesses was filed and on May 31, 1960, a supplemental list of witnesses.

On June 27, 1960, defendant DiGerlando, moved for a severance which was granted.

Some seven months after the arraignment, on September 16, 1960, the State's Attorney's office requested leave to furnish DiGerlando with a list of witnesses to an oral confession he made to Captain Flynn, policeman, the only name furnished being that of Captain Flynn. Over objection of counsel for defendant, the name was received.

Defendant made a motion to suppress evidence of guns held by the State's Attorney, taken from the basement premises of defendant allegedly without consent or search warrant, on the basis of a violation of defendant's rights under the fourth amendment to the constitution of the United States and section 6 of article II of the constitution of Illinois. After hearing evidence on this motion, the court denied the same. Also, defendant filed a motion to suppress statements of defendants allegedly taken under duress. After hearing evidence, the court denied this motion.

Defendant testified at the trial that on the way to headquarters in the car he was asked by officer Montejano if he knew Robert Chan, Daniel Escobedo, Grace Valtierra or Manuel Valtierra. He said he did not know Manuel but he knew the others slightly. He said the last time he saw Escobedo was some months back, but a tavern operator testified he saw them together the day before the shooting. At headquarters defendant was taken into a room 10 by 20 feet and was handcuffed to a chair. Several persons were brought in and Montejano and three other officers questioned him. He says that during a period of 20 minutes, Montejano kicked over his chair by reason of which he fell to the floor; that four officers beat him and Montejano put a telephone book along his face and on top of his head and another officer hit the book about five times; that the officers struck the back of his neck and his ribs and chest; and that Montejano squeezed his penis and testicles. Captain Flynn then came into the room and said it would go easier with him if he co-operated. Flynn then typed a statement and DiGerlando signed it. Defendant sat handcuffed to the

chair for about 30 minutes to an hour. Flynn and other officers came in and told him Escobedo and Chan had said he killed Valtierra. Flynn typed out another statement saying defendant killed Valtierra. At 12:00 midnight he made another statement which was not signed. He was given nothing to eat or drink until after he made the last statement. His age was 18 years. He claims his jacket was torn in the fray. The statements he made conflicted in numerous details but all statements except one confessed the killing. In one he said he was hired by the wife, Grace, to kill her husband for $500.

The same night, DiGerlando made a statement confessing guilt before a court reporter in answer to questions by Cooper, an assistant State's Attorney.

The next day, DiGerlando accompanied the officers to look for the gun which he said he had thrown in the lake. When they arrived at the lake, he said two guns were hidden in his basement above the heater. He told them just where the guns were and to go get them. The officers went to the place to which defendant directed them, which was a shoe store where Anthony, DiGerlando's brother, and parents also lived. One of the officers testified that DiGerlando told them to go down in the basement and they would find the guns hidden over a water heater and that he did not want to face his family. The officer further testified he and officer Montejano went to the door of the store, saw DiGerlando's brother there and told him they were police officers and that his brother had been involved in a shooting and had told him to come over there and recover the guns in the basement. The brother of defendant testified he asked the officers if they had a warrant; however, the officers denied he asked for any warrant. The officers further testified the brother led them down the steps into the basement, removed obstacles standing in their way and was present when the officers took the guns.

DiGerlando also said he changed the barrel on the gun

after the shooting. This was corroborated by Stanley Gora, a part-time salesman at the gun shop.

In rebuttal all of the police officers denied there was any coercion of defendant in making the confessions or that any promises were made to him.

Defendant here contends as reversible error: (1) that his constitutional rights were violated by the search of his house and seizure of the two pistols, one of which later was used in evidence against him; (2) that the court erred in denying the motion to suppress the confessions taken in violation of constitutional standards; (3) that the court erroneously admitted a confession allegedly made by him when he was not properly advised of its existence as required by section 1 of division XIII of the Criminal Code (Ill. Rev. Stat. 1959, chap. 38, par. 729); and (4) that the State failed to prove him guilty beyond all reasonable doubt.

As to the first contention of the defendant that his constitutional rights were violated by the failure of the trial court to suppress the guns seized at his residence, this assigned error presents the question of search without a search warrant, which has been the subject of many decisions and discussed by numerous text writers. The principal decision to be relied on is *United States* v. *Rabinowitz,* 339 U.S. 56, 94 L. ed. 653, which holds that the relevant test of validity of such a search is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. In this respect, *Trupiano* v. *United States,* 334 U.S. 669, 92 L. ed. 1663, was expressly overruled. Several later cases on related subjects have not changed that rule. *Chapman* v. *United States,* 365 U.S. 610, 5 L. ed. 2d 828; *United States* v. *Jeffers,* 342 U.S. 48, 96 L. ed. 59; *Jones* v. *United States,* 357 U.S. 493, 2 L. ed. 2d 1514; and *Wong Sun* v. *United States,* 371 U.S. 471, 9 L. ed. 2d 441.

This case, moreover, involves one where the issue is whether consent was given to make the search. Search by consent is not a form of search governed by the fourth

amendment to the Federal constitution. Search by consent is a complete waiver of constitutional rights. (*Zap* v. *United States*, 328 U.S. 624, 90 L. ed. 1477; *People* v. *Mathews*, 406 Ill. 35.) The record shows that counsel for defendant in the trial court conceded the issue was consent. In Illinois, the question of whether defendant did or did not consent to a search is a question of fact to be resolved by the trial judge, whose finding will be upheld unless clearly unreasonable. (*People* v. *Peterson*, 17 Ill.2d 513; *People* v. *Fiorito*, 19 Ill.2d 246.) The court found and the evidence showed that defendant not only voluntarily gave his consent to the search, but directed where to find the gun and that the officers go get it "because he did not want to face his family." Though testifying on other matters, defendant did not testify that he gave no consent or that it was involuntary. While he was only 18 years old, the trial judge observed him as a witness and was in a better position to observe and determine his understanding. Likewise, the evidence establishes a valid consent by his brother. The finding was not unreasonable. There was, then, no error in denying the motion to suppress the evidence of the gun seized on such search.

The second contention of the defendant is that the court erred in denying the defendant's motion to suppress the confessions. The basis for this contention is, first, that the confessions were the result of coercion and physical force exercised by the officers who obtained them from the defendant, all of which was denied. The trial court determined this question upon preliminary inquiry and held that the confessions were voluntary. On review, such determination will not be disturbed unless manifestly against the weight of the evidence or unless the court has committed an abuse of discretion. (*People* v. *Spencer*, 27 Ill.2d 320.) There is nothing in the record to indicate that the circumstances surrounding the confessions were inherently so coercive to render the confessions involuntary.

The defendant makes, however, two other contentions concerning the confessions. The first is that there were inconsistencies between the statements in the confessions which rendered them inadmissible. The confessions did progress from an absolute denial to a full confession of guilt. The credibility of a confession is for the trier of the fact (here the jury) and the jury may accept all, parts, or none of the confession. (*People* v. *Guido,* 321 Ill. 397.) In this case, the jury was entitled to and apparently did believe the central fact of all of the defendant's confessions, namely the guilt of the defendant, and thus determined no valid inconsistencies existed in the confessions that would make them not worthy of belief.

The defendant makes also a further contention, which has to do with the oral confession made to Captain Flynn of the police. No notice of its existence was furnished at the time of the arraignment as required by statute. (Ill. Rev. Stat. 1959, chap. 38, par. 729.) The purpose of this statute is to give defendant notice of the existence of the confession so he might prepare his defense. Notice was not given of it until some seven months after arraignment but this was ten months before trial began. Under this circumstance, a substantial compliance with the statute, considering its purpose, was had and no reversible error was committed by the court by the admission of this confession and especially since the other confessions did also disclose his guilt. (*People* v. *Pelkola,* 19 Ill.2d 156; *People* v. *Seno,* 23 Ill.2d 206; *People* v. *DuPree,* 26 Ill.2d 320.) Therefore, it is our conclusion that the confessions were properly admitted into evidence.

The defendant also presented an alibi that he was asleep in his room and that his brother saw him at the time the alleged crime was committed. The credibility of the alibi was for the jury.

When all the evidence in the case is considered, we find no foundation for the defendant's final contention that the

552

evidence does not prove him guilty beyond all reasonable doubt. The judgment of the trial court is therefore affirmed.

*Judgment affirmed.*