(No. 67289.▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lee, v. JOHN PECORARO, Appellant.

*Opinion filed June 4, 1991.—Rehearing
denied September 30, 1991.*

2

4

6

CALVO, J., took no part.
CLARK, J., dissenting.

Charles M. Schiedel, Deputy Defender, of Springfield, and Steven Clark, Assistant Defender, of Chicago, both of the Office of the State Appellate Defender, for appellant.

John Pecoraro, of Menard, *pro se.*

Neil F. Hartigan, Attorney General, of Springfield, and Cecil A. Partee, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Assistant State's Attorney, and Jeanette Sublett, Special Assistant State's Attorney, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, John Pecoraro, was found guilty of murder. He was sentenced to death. Defendant's execution was stayed pending direct review by this court (Ill. Const. 1970, art. VI, §4(b); 134 Ill. 2d Rules 603, 609(a)). We affirm.

## FACTS

The State presented the following evidence. On August 6, 1986, at approximately 9 a.m., Chicago Police Officer Jeffrey Becker was driving in a marked police squad car when defendant, John Pecoraro, flagged down Officer Becker's car. Officer Becker stopped his vehicle and defendant approached the car. Defendant requested directions to the 14th District Police Station, as he informed Officer Becker that he had killed someone and wanted to make a confession. According to Officer Becker, defendant had been drinking but did not appear to be intoxicated. Officer Becker advised defendant of his *Miranda* rights and drove him to the police station.

En route to the police station, Officer Becker asked defendant if he was willing to answer questions and defendant agreed to do so. Officer Becker learned whom defendant killed and when the incident occurred. They arrived at the station, whereupon Officer Becker read defendant his rights again and asked specific information about the incident. He then contacted the appropriate follow-up unit.

At approximately 11 a.m. that morning, two detectives, Detective Peter Araipa and Detective William Kaupert, arrived at the police station and spoke with the defendant. Defendant was again advised of his *Miranda* rights and voluntarily answered questions regarding the murder. Although defendant informed the detectives that he had not slept for two nights and that he had taken approximately 1¾ grams of cocaine that same morning, it appeared to both detectives that defendant was not under the influence of alcohol or any drugs.

Subsequent to their conversation with defendant, the detectives notified the State's Attorney's office, whereupon Assistant State's Attorney Joseph Barbaro came to the police station and interviewed defendant. Mr. Barbaro asked defendant if he would give a court-reported statement and defendant initially agreed to do so. However, defendant changed his mind and Mr. Barbaro reduced defendant's statement into a five-page handwritten statement. Upon completion of the statement, Mr. Barbaro read through the statement with defendant and asked him to sign it. Defendant refused, claiming that he simply wanted to get this matter off his chest, he did not want to go to jail as a result of it, and he did not want to spend anymore time in jail. Defendant wanted to see his girlfriend, children and father again and, therefore, would not sign the statement.

In the handwritten statement prepared by Mr. Barbaro and in his conversations with the officer and detec-

tives, defendant confessed to killing Jimmy Ray Christian (Jimmy) on December 6, 1982. Apparently, defendant had become very close with Nadine Christian (Nadine), the victim's wife, and they were involved in a relationship. According to testimony by the State's witnesses, defendant stated that he was going to kill Jimmy, as he did not like the way he treated Nadine and they could then enjoy their relationship openly.

On the morning of December 6, 1982, defendant went to the home of Jimmy and waited for him to come outside. As Jimmy was leaving his home, defendant pulled a gun on the victim and instructed him to get into Jimmy's car. Defendant drove the victim to an area near California and Addison Streets and shot Jimmy once in the chest. According to testimony at trial, he did not shoot the victim in the head for fear that passersby would notice the blood on the window. After he shot Jimmy, defendant boarded a bus and left the vicinity. Later that evening, defendant went to the Chicago River bridge at Webster and Ashland Streets and threw the gun into the river.

At trial, Martha Jackson, a friend of Nadine Christian, testified that Nadine and the defendant spent considerable time together. On one occasion, Mrs. Jackson noticed defendant carrying what appeared to be a .45-caliber gun. On or about September 25, 1982, Mrs. Jackson was at a lounge with defendant and Nadine where defendant made comments to the effect that if he could not have Nadine then nobody would.

According to State's witnesses, defendant had not seen Nadine since he killed her husband, although he had heard that she received approximately $120,000 through her husband's life insurance policy.

Subsequent to his confession, defendant was arrested and charged with two counts of murder and one count of armed violence. Prior to trial, the court denied defend-

ant's motion to suppress statements made in his confession, and granted in part and denied in part defendant's motion *in limine* regarding the use of defendant's prior convictions at trial.

The defendant raised numerous issues on appeal, none of which have merit.

## DEFENDANT'S CONFESSION

Defendant argues both through his attorney and in his *pro se* brief that the unsigned, handwritten confession failed to prove defendant guilty of murder beyond a reasonable doubt and denied him a fair trial. A conviction founded upon a confession must be "corroborated by some evidence, exclusive of the confession, tending to show that a crime did occur and that the defendant committed it." (*People v. Neal* (1985), 111 Ill. 2d 180, 194.) In Illinois, the *corpus delicti*, which consists of the fact of death and the fact that death was caused by the criminal agency of some person, is adequate corroboration to sustain a conviction. (*People v. Holmes* (1977), 67 Ill. 2d 236, 239.) Additionally, the requirement that a confession be corroborated is satisfied by proof of the *corpus delicti*. (*People v. Willingham* (1982), 89 Ill. 2d 352, 358-59.) Jimmy Christian was undisputedly murdered, and the incident was committed by the criminal act of some person, thereby establishing a *corpus delicti*. Furthermore, defendant's detailed confession was sufficiently corroborated both by physical evidence and testimony at trial to uphold defendant's conviction based on his confession.

The testimony of Officer Becker, Detectives Araipa and Kaupert, and Mr. Barbaro regarding the circumstances of defendant's confession and the murder was basically identical, both at the motion to suppress and at trial. Testimony by Martha Jackson further corroborated defendant's confession, as did testimony by Elizabeth

Lester, Jimmy's sister-in-law, and Dr. Konacki, the medical examiner who conducted the autopsy on the victim. Also, the statement's reliability is further evidenced by the fact that details in the confession could not have been known by the police prior to defendant's confession such as: (1) defendant's reason for shooting Jimmy in the chest as opposed to the head; (2) the fact that Jimmy physically abused both Nadine and her son; (3) defendant's route and mode of transportation after the murder; and (4) the place of disposal of the gun after the incident.

In hearing testimony on defendant's pretrial motion to suppress the confession, the trial judge found defendant's testimony to be "exaggerated" and "untruthful." The trial court properly admitted into evidence defendant's written confession, which was found to have been made voluntarily and knowingly. On review, we will not question such a determination unless the court has committed an abuse of discretion or the decision is manifestly against the weight of the evidence. *People v. Di-Gerlando* (1964), 30 Ill. 2d 544, 550.

Additionally, the jury heard testimony regarding defendant's confession, as well as testimony by the defense regarding alleged inaccuracies in defendant's confession. The credibility of defendant's confession was to be weighed by the jury as the trier of fact and the jury could have accepted all, part or none of the confession. (*DiGerlando*, 30 Ill. 2d at 551.) The jury weighed all the evidence and found defendant guilty of murder.

It is not this court's function in reviewing evidence to retry the case nor is it to determine whether it believes that the evidence at trial established guilt beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) As the reviewing court, we accord due consideration to the jury in this case as the trier of fact to assess the credibility of witnesses, weigh the evidence, and

draw reasonable inferences from the evidence. *People v. Young* (1989), 128 Ill. 2d 1, 51.

From our review of the record, defendant's confession was properly allowed at trial and adequately corroborated by physical evidence and testimony for the jury to sufficiently find defendant guilty of murder beyond a reasonable doubt. Furthermore, at post-trial motions addressing this issue, the court found that the evidence did establish guilt beyond a reasonable doubt. Thus, we find that the holding of the trial court was not contrary to the manifest weight of the evidence, and we will not set aside the determination made by the fact finder.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant complains that he received ineffective assistance of counsel resulting from, among other claims: (1) counsel's failure to make various trial objections, thereby failing to preserve the record for review; (2) counsel's failure to impeach the State's witnesses; and (3) counsel's failure to call various witnesses to testify on defendant's behalf. Defendant filed motions for new trial alleging both through his attorney and in his own *pro se* motions that defendant was denied effective assistance of counsel. Defendant further alleges that because the trial judge failed to appoint other counsel to represent defendant at the hearings of the post-trial motions with respect to the ineffective-assistance-of-counsel claims, this case should be remanded for a hearing to determine whether defendant received effective assistance of counsel.

With respect to defendant's allegations that his counsel did not make the appropriate trial objections, call more witnesses to testify, impeach various State witnesses, and other claims which were not preserved on the record, we begin with an analysis of *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104

S. Ct. 2052. (See *People v. Albanese* (1984), 104 Ill. 2d 504, 526-27 (adopting *Strickland* standard).) *Strickland* requires that defendant prove (1) that "counsel's performance was deficient" in that it "fell below an objective standard of reasonableness" and (2) that the "deficient performance prejudiced the defense" such that defendant was deprived of a fair trial whose result was reliable. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) However, in analyzing this two-part test, the *Strickland* court specifically stated that a court need not "determine whether counsel's performance was deficient before examining the prejudice suffered" by defendant, but may dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice before reaching the deficiency analysis. (*Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *Albanese*, 104 Ill. 2d at 527.) Thus, we believe that defendant must establish both that his attorney's representation was deficient and that he suffered substantial prejudice as a result of these deficiencies. We find that defendant did not establish either requirement.

The trial judge heard both defense counsel's and defendant's motions for new trial based on claims of ineffective assistance of counsel. The trial judge denied the motions. The judge determined that several issues raised by defendant, such as making trial objections and calling more witnesses, dealt with matters of defense strategy. As a general rule, trial strategy encompasses decisions such as what matters to object to and when to object. (*People v. Grant* (1976), 38 Ill. App. 3d 62, 70.) Furthermore, counsel's failure to bring a motion, to object to testimony, or to object to portions of closing arguments does not establish incompetent representation. *Grant*, 38 Ill. App. 3d at 70; see also *People v. Stewart* (1974), 24 Ill. App. 3d 605, 612.

In sum, the court found that defendant was "defended excellently" and given a "vigorous and intelligent defense" by counsel at trial. The trial judge considered all arguments posed by defendant in accordance with the *Strickland* standards. He concluded that the evidence did, in fact, show guilt beyond a reasonable doubt and that defendant received competent representation. From our review of the record, we agree with the trial court. Defendant has not established either requirement in accordance with *Strickland*. Defendant has shown neither that his attorney's performance was deficient nor that he suffered prejudice as a result of counsel's alleged deficiencies.

In further support of our position, nowhere in the record does it reflect that defendant requested other counsel to represent him. Defendant did request after the trial and prior to sentencing to proceed as co-counsel, upon which the trial judge informed defendant that he either had a right to be represented by himself or by an attorney, but he could not take a position in the middle ground. The trial judge then allowed defendant the opportunity to write motions which his counsel could then present. Defendant chose this option, and did not elect to represent himself or retain other counsel.

Defendant claims that in accordance with *People v. Krankel* (1984), 102 Ill. 2d 181, this matter should be remanded to determine whether defendant was denied effective assistance of counsel, as defendant should have had other counsel appointed to argue his post-trial motions regarding his alleged ineffective assistance of counsel. We find *Krankel* to be factually distinguishable from the instant case and, thus, inapplicable.

Defendant Krankel requested to make his own argument on his *pro se* post-trial motion, and did so after the trial judge denied defendant's appointed counsel's request for a continuance in order to allow other appointed

counsel to aid defendant. The court remanded the case for a hearing with newly appointed counsel to assert defendant's post-trial ineffective-assistance-of-counsel claim. Unlike *Krankel*, where defendant was represented by an appointed public defender at both trial and post-trial motions, defendant Pecoraro retained private counsel to represent him at trial and in post-trial motions. It was not within the trial court's rubric of authority to advise or exercise any influence or control over the selection of counsel by defendant, who was able to, and did, choose counsel on his own accord. (*People v. Walsh* (1963), 28 Ill. 2d 405, 409.) Moreover, the trial judge could not force defendant to retain counsel other than that chosen by defendant. (*People v. Johnson* (1979), 75 Ill. 2d 180, 185.) Defendant and his counsel were the only parties who could have altered their attorney-client relationship. Defendant could have retained other counsel to represent him prior to the hearing of his post-trial motions.

Further differences should be noted between *Krankel* and the instant case. Defense counsel requested a continuance to obtain new counsel for defendant prior to hearing the motion and the request was denied. No such request was made in the present action. Also, the prosecution and defense in *Krankel* agreed that defendant should have had other counsel argue his post-trial motion. No agreement of this type existed in the present litigation. Finally, *Krankel* is a fairly fact-specific case, and the circumstances in the case at hand, where defendant retained his own private counsel and did not request that he be represented by other counsel, do not warrant the application of *Krankel*. Therefore, we find this argument meritless.

## THE PROSECUTION'S CLOSING ARGUMENT

Defendant contends that statements presented by the

State to the jury during closing arguments misstated the law and shifted the burden of proof to the defense. The prosecution stated:

> "[I]f you go back and you—say you come back with something other than a finding of guilty, what you're saying is, Mr. Barbaro, we didn't believe you. \*\*\* Officer Becker, we don't believe you either."

Defendant made no objections to these statements at trial nor did he address them in his post-trial motions. As a consequence, any error arising from the remarks was waived. *People v. Enoch* (1988), 122 Ill. 2d 176, 185-87.

Even had this issue been preserved for consideration, closing arguments similar to those presented by the State have been allowed and found not prejudicial where the prosecution's version of the incident varies substantially from the version given by the defense. *People v. Smith* (1987), 158 Ill. App. 3d 595, 600.

In *Smith*, defense counsel objected to portions of the prosecution's closing arguments where counsel stated that in order to believe the defendant, the jury would have to believe everyone else was lying. The court found that such a statement was basically true, as the versions of the incident varied substantially between the prosecution and the defense. Thus, the trial court appropriately allowed the statements by the prosecution implying that the jury would have to believe one side over the other. See also *People v. Alexander* (1984), 127 Ill. App. 3d 1007, 1015 (court declined to hold closing statement reversible error where it was stated that it would be necessary to disbelieve each of the State witnesses in order to believe defendant where defendant's testimony contradicted that of the State's witnesses and the jury was not misled by such comments).

In the instant case, the defendant's version of the occurrence differed considerably from that given by wit-

nesses for the prosecution. Therefore, regardless of waiver, such comments were not prejudicial and not reversible error.

Defendant further urges that such statements constituted plain error and that counsel's failure to preserve the record denied him effective assistance of counsel. The State's closing arguments complained of here would not justify the implication of the plain error doctrine, as the evidence is not closely balanced nor is the alleged statement of such magnitude to have deprived the accused a fair and impartial trial. (*People v. Mack* (1984), 105 Ill. 2d 103, 125; *People v. Smalley* (1984), 122 Ill. App. 3d 70, 76-77.) We have previously disposed of defendant's ineffective-assistance-of-counsel claim.

## TESTIMONY AND ARGUMENT REGARDING DEFENDANT'S PRIOR CONVICTIONS

Defendant argues on his own behalf through his *pro se* brief and through his attorney that the jury was erroneously allowed to consider defendant's prior criminal history through testimony given by Detective Kaupert and through the State's closing argument. Defendant objects to testimony that he would not sign his confession prepared by Mr. Barbaro because he did not want to "go back to prison." However, we find that defendant waived this issue for review by failing to object to these statements at trial. Although defendant filed a post-trial motion for new trial raising this issue, *both* a trial objection and a written post-trial motion are required to preserve an issue for review by this court. (*Enoch*, 122 Ill. 2d at 185-87.) Defendant's failure to object to this issue at trial effectively waived his right to review by this court.

In response to defendant's suggestion that even though his counsel failed to object to such testimony, the trial judge should have entered a cautionary instruction

or moved on its own motion to strike such references, the trial judge found it would have been improper for the court to have done so, as it did not want to interfere with defendant's theory and defense of the case. We find the lower court did not abuse its discretion in denying defendant's motion for new trial regarding this issue.

With respect to the defendant's allegations that he was denied effective assistance of counsel due to his counsel's failure to object to these statements, we find it has no merit as discussed previously.

## TESTIMONY REGARDING THE VICTIM'S FAMILY

Defendant contends that testimony by the victim's brother regarding the victim's family denied defendant a fair trial. We find that defendant waived this issue for review by failing to object to such testimony at trial and by failing to include this issue in his written post-trial motion. (*Enoch*, 122 Ill. 2d at 185-87.) Furthermore, defendant claims that defense counsel's failure to preserve this issue on the record constituted ineffective assistance of counsel. We already addressed this claim, *supra*, and found it had no merit.

Finally, the criterion for determining whether plain error has occurred with respect to this testimony or counsel's alleged failure to object to it does not apply since the evidence in this case is not closely balanced nor is the contended error of such magnitude that defendant was denied a fair and impartial trial. *Mack*, 105 Ill. 2d at 125; *Smalley*, 122 Ill. App. 3d at 76-77.

## TESTIMONY REGARDING THE VICTIM'S LIFE INSURANCE

Defendant claims that testimony regarding the victim's life insurance was erroneously admitted into evidence to establish a financial motive for the murder. Defendant failed to preserve this issue for review by fail-

ing to object to the testimony of Mr. Barbaro and by failing to raise this entire issue, including those portions of the testimony he objected to at trial, in his post-trial motions. Therefore, defendant waived this issue for review. (*Enoch*, 122 Ill. 2d at 185-87.) We decline again to consider defendant's claim of ineffective assistance of counsel based on our previous discussion.

## FALSE TESTIMONY, DEFICIENT EVIDENCE AND DISCOVERY VIOLATIONS

Defendant further complains in his *pro se* brief that (1) the State sought an indictment for the incorrect day of the victim's murder; (2) said indictment form was withheld from the defense until after trial; (3) the State introduced false testimony and evidence at trial and allowed such evidence to be considered by the jury; and (4) the State violated rules of discovery. These issues were not preserved for review. Accordingly, they are waived. (*Enoch*, 122 Ill. 2d at 185-87.) Even if defendant had not waived these issues for review, we find that any error regarding the date of murder was harmless and all other claims meritless.

The grand jury indictment incorrectly listed December 8, 1982, as the date on which defendant committed the murder of Jimmy Christian. Evidence established at trial that the actual date of the murder was December 6, 1982, and the date the victim's body was discovered was December 8, 1982. Defendant was sufficiently apprised of the precise offense charged in the indictment and has not shown to have been prejudiced in the preparation of his defense by the error in the date of murder on the indictment. Moreover, any inconsistency regarding the date of murder was harmless error, as the precise time of the murder was not an essential element of the crime. See *People v. Alexander* (1982), 93 Ill. 2d 73, 77-78 (date alleged in charging instrument need not ordinarily be

proved precisely and any irregularity between the indictment and proof establishing the offense was committed on a date other than that precisely alleged is not a fatal variance).

Defendant provides no basis for his allegations that said indictment form was withheld from the defense or any evidence that any such alleged withholding prejudiced defendant in preparing his defense. Any such error would be harmless and would not invoke the plain error rule. Defendant's argument regarding false testimony by Detective Kaupert concerning the date of the murder is meritless as well. Any alleged error in Detective Kaupert's testimony regarding the date of murder was harmless.

Finally, notwithstanding that defendant clearly waived the issue regarding the State's failure to comply with discovery rules, we find this argument totally void of any evidence or proof that the State failed to do so. Defendant does not specify which rules were violated, or that such evidence was requested by defense counsel and subsequently suppressed by the State. (See *Moore v. Illinois* (1972), 408 U.S. 786, 794-95, 33 L. Ed. 2d 706, 713, 92 S. Ct. 2562, 2568.) Furthermore, defendant did not show that the discovery material purportedly withheld from the defense would have been favorable to defendant or material to his guilt or punishment. (*Moore*, 408 U.S. at 794-95, 33 L. Ed. 2d at 713, 92 S. Ct. at 2568.) We find defendant's claims to have been waived and, regardless of waiver, unfounded.

## CONSTITUTIONALITY OF ILLINOIS DEATH PENALTY ACT

Defendant asserts that the death penalty statute is unconstitutional in that it: (1) places the burden of persuasion on defendant to prove that death should not be imposed after he is found eligible; (2) allows prosecutors

unguided discretion to select candidates for the death penalty; and (3) does not sufficiently minimize the risk of arbitrary and capricious sentences. Defendant's arguments have previously been considered and rejected by this court, and we continue to adhere to those stated positions on these issues. See *People v. Kubat* (1983), 94 Ill. 2d 437, 503-04; *People v. Jones* (1988), 123 Ill. 2d 387, 426-27; *People v. Whitehead* (1987), 116 Ill. 2d 425, 462-65; *People v. Albanese* (1984), 102 Ill. 2d 54.

## CONCLUSION

For the reasons set forth above, we affirm defendant's conviction and sentence of death. We hereby direct the clerk of this court to enter an order setting Tuesday, November 19, 1991, as the date on which the sentence of death entered by the circuit court of Cook County shall be carried out. The defendant shall be executed in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 119—5). The clerk of this court shall send a copy of the mandate to the Director of Corrections, the warden of Stateville Correctional Center, and the warden of the institution where the defendant is confined.

*Affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.

JUSTICE CLARK, dissenting:

Because I believe the majority opinion incorrectly analyzed whether the trial court should have appointed new counsel to argue defendant's *pro se*, post-trial motion alleging ineffective assistance of counsel, I respectfully dissent.

The majority opinion, in concluding that new counsel should not have been appointed to argue defendant's *pro*

*se,* post-trial motion distinguished this court's decision in *People v. Krankel* (1984), 102 Ill. 2d 181. Specifically, the majority opinion focused on the type of counsel defendant had at trial (a private attorney), and whether defense counsel requested that new counsel argue defendant's *pro se,* post trial motion.

In *Krankel,* this court found that the failure to appoint new counsel to argue the defendant's *pro se,* post-trial motion alleging ineffective assistance of counsel was error and remanded the cause for a new hearing on the ineffective assistance of counsel issue. The defendant's trial counsel had failed to present an alibi defense, or to contact an alibi witness suggested by the defendant. Both the State and defendant agreed that new counsel should have been appointed to argue the defendant's claim of ineffective assistance of counsel.

Subsequently, our appellate court, in interpreting *Krankel,* held that there is no *per se* rule mandating that new counsel should be appointed whenever a defendant presents a *pro se,* post-trial motion for a new trial alleging ineffective assistance of counsel. (See *People v. Bell* (1990), 197 Ill. App. 3d 613; *People v. Washington* (1989), 184 Ill. App. 3d 703; *People v. Generally* (1988), 170 Ill. App. 3d 668; *People v. Jackson* (1985), 131 Ill. App. 3d 128.) Rather, to determine whether new counsel should be appointed, "the trial court should examine the factual matters underlying the defendant's claim[.] *** [I]f the claim lacks merit or pertains to matters of trial strategy, then no new counsel need be appointed[, but] if the allegations show possible neglect of the case *** new counsel [should] be appointed." *Washington,* 184 Ill. App. 3d at 711.

Recently, in *People v. Nitz* (1991), 143 Ill. 2d 82, this court adopted our appellate court's interpretation of *Krankel,* and set forth the parameters for when new counsel should be appointed to argue a defendant's *pro*

*se,* post-trial motion for a new trial alleging ineffective assistance of counsel. In *Nitz,* this court stated:

> "If the trial court conducts a preliminary investigation of the defendant's allegations and determines them to be spurious or pertaining only to trial tactics, no new counsel should be appointed to represent the defendant. If, however, defendant's allegations of incompetence indicate that trial counsel neglected the defendant's case, the court should appoint new counsel to argue defendant's claims of ineffective assistance of counsel." *Nitz,* 143 Ill. 2d at 134-35.

Presently, the majority distinguished *Krankel* by stating that the defendant in *Krankel* was represented by an appointed public defender (144 Ill. 2d at 15), whereas the defendant in this case was represented by a private attorney. Thus, according to the majority opinion, the trial court did not have the authority to "advise or exercise any influence or control over the selection of counsel by defendant, who was able to, and did, choose counsel on his own accord." 144 Ill. 2d at 15.

This is irrelevant. As noted in *Nitz,* if the defendant's claims of ineffective assistance of counsel show possible neglect of the case, then new counsel should be appointed to argue the defendant's allegations. Otherwise, there would be a conflict of interest to have defense counsel argue his own incompetence at the hearing. It is as equally inappropriate for *private counsel* to argue his incompetence at a post-trial hearing as it is for an appointed public defender.

Further, the majority states that defendant's trial counsel never requested that new counsel be appointed to argue defendant's *pro se* motion alleging ineffective assistance of counsel, as defense counsel did in *Krankel.* However, the majority acknowledges that defendant did request to be co-counsel with respect to his post-trial motion, but the trial court told defendant that he could ei-

ther proceed *pro se* or through his attorney. Again, it is irrelevant that defendant's trial counsel failed to request that new counsel be appointed to argue the trial counsel's own incompetence.

Because the majority opinion incorrectly distinguished *Krankel* and incorrectly analyzed whether new counsel should be appointed to argue defendant's *pro se*, posttrial motion alleging ineffective assistance of counsel, I respectfully dissent.