NOTICE
Decision filed 06/20/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220568-U

NO. 5-22-0568

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 21-CF-759 |
| | ) | |
| THOMAS J. JARRETT, | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Welch and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Because the defendant did not receive ineffective assistance of trial counsel where he cannot show that he was prejudiced by the allegedly deficient performance of his trial counsel, we affirm his conviction for home invasion, and his otherwise unchallenged 10-year sentence.

¶ 2    The defendant, Thomas L. Jarrett, appeals his conviction and 10-year sentence, following a bench trial in the circuit court of Macon County, for the offense of home invasion. For the reasons that follow, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    On June 29, 2021, the defendant was charged, by information, with one felony count of home invasion and two misdemeanor counts of domestic battery. Each charge involved the same alleged victim, Marshena Banks. The home invasion count alleged that the defendant entered

1

Banks's home without permission and intentionally caused injury to her by striking and kicking her body and head with his hands and feet. The first domestic battery count alleged that the defendant knowingly caused bodily harm to Banks, who allegedly was a family or household member of the defendant, by striking and kicking her body and head with his hands and feet. The second domestic battery count alleged that the defendant "knowingly made physical contact of an insulting or provoking nature with [Banks], a family or household member of the defendant" by striking and kicking her body and head with his hands and feet.

¶ 5　The defendant subsequently was released on bond, subject to electronic monitoring and other conditions. The defendant was not permitted, *inter alia*, to be within 500 feet of the home in which Banks lived, and was not permitted to have any direct or indirect contact with Banks. Thereafter, the State filed a number of verified applications to increase the defendant's bond, alleging that the defendant violated the conditions of his bond on multiple occasions by being in the exclusion zone within 500 feet of Banks's residence, as well as by attempting to tamper with his electronic monitoring device and by leaving the state of Illinois without court approval. On December 1, 2021, a hearing was held on the State's verified applications to increase the defendant's bond. Following the introduction of documentary evidence, and argument by the parties, the trial judge agreed with the State that the conditions of bond had been violated, and raised the bond, although he raised it less than the State requested.

¶ 6　At a subsequent proceeding, the defendant made a knowing and voluntary waiver of his right to a jury trial, following admonishments from the trial judge, and the case proceeded to a bench trial that began on April 25, 2022. The first witness called by the State was Marshena Banks. Banks testified that she currently lived at the residence at which the crimes were alleged to have occurred. She testified that she did not know exactly how long she had lived there, that she could

2

not remember if she lived there on May 11, 2021, and that she did not remember police officer Eric Havens coming to the house and speaking to her on May 11, 2021. She further testified that she did not remember Officer Havens appearing in uniform, or having a body camera. She testified that she did not "remember that day at all." She testified that she did not remember Officer Havens asking her what happened, and did not remember telling Officer Havens that Banks's "ex came and kicked in the door and jumped on" Banks.

¶ 7    Banks testified that she knew the defendant, and she identified him in the courtroom. She testified that she and the defendant had a child together. When asked if Officer Havens asked her if she was cut anywhere after the incident in question, Banks testified that she did not remember. When asked if Officer Havens asked her if the red stains on her clothing were paint or blood, Banks testified that she did not remember. When defense counsel thereafter offered a hearsay objection to the question, counsel for the State responded as follows: "Your Honor, obviously this is a situation where we're going to have to treat her as hostile so I'm going to have to confront her with every statement she made and every response she gave." The trial judge overruled defense counsel's objection.

¶ 8    Counsel for the State then asked Banks a second time if Officer Havens asked her about the stains on her clothing. Banks did not answer, instead asking, "Do I have the right to plead the fifth?" Counsel for the State answered, "No." There was no objection from defense counsel and no statement from the trial judge. Banks then answered, "Well, no, I don't remember." She thereafter testified that she did not remember telling Officer Havens that the stains were blood from her nose and lip, did not remember Officer Havens asking her what the name of her ex was, did not remember telling Officer Havens her ex was the defendant and spelling his name for Officer Havens, and did not remember Officer Havens asking if she knew the defendant's phone number

3

and address. She further testified that she did not remember (1) stating that she did not know the defendant's phone number and address, (2) stating that no one else was present during the incident, (3) describing what she thought the defendant was wearing at the time of the incident, (4) stating that she believed the defendant left on foot, or (5) stating how long she had been in a relationship with the defendant, and how long ago the relationship ended. She was asked additional questions, all of which she answered by stating that she did not remember. When defense counsel objected to one of the questions, and the trial judge overruled the objection, counsel for the State added, "And for the record, obviously, I have to prove up the—I have to perfect the impeachment so I have to go through all of this."

¶ 9 On cross-examination, Banks continued to deny remembering anything about the incident. When asked why she did not remember, Banks stated, "Because I don't. Going through a lot of emotional stuff. I don't remember that day. Don't remember *** that timeframe." She thereafter agreed that the doorframe to the house where the crimes were alleged to have occurred had damage from termites. She agreed that the damage occurred "without anyone busting through the door." When asked more questions about May 11, 2021, she repeatedly reiterated that she did not remember that day.

¶ 10 Eric Havens testified that he was an officer with the Decatur Police Department, and that on May 11, 2021, he was on duty and was dispatched to Banks's residence. He testified that he spoke to Banks, and that while doing so, he was wearing a department-issued body camera, which recorded their interaction. He testified that he subsequently reviewed the body camera footage from the interaction, and that it was "a fair and accurate recording" of the interaction. Counsel for the State requested permission to play the recording for the court. Defense counsel objected to playing the entire recording, stating that counsel believed the State could only "play snippets" for

4

impeachment purposes. Counsel for the State responded that Banks "essentially, testified that she doesn't recall anything," and that "the question and answer that [counsel for the State] did on the stand is the portion that's going to be played." She added, "It's the substance of what happened and in order to perfect the impeachment because her inability to recall is, essentially, equivalent under the case law as a denial, I have to actually show it." The trial judge overruled the defense objection, and the recording—which comprised approximately five minutes, and is included in the record on appeal—was played for the court. The contents of the footage are not disputed on appeal, with the parties agreeing that the footage shows, *inter alia*, Banks telling Officer Havens that her "ex" kicked in the door to the house and jumped on Banks.

¶ 11    Thereafter, counsel for the State asked Officer Havens about photographs he took at the scene. He testified that one photograph showed "the door that the suspect entered in through, forced it open, and that's the missing trim on the side of the doorjamb." He testified that another photograph showed the blood on Banks's clothing, and yet another photograph showed "her split lower lip, and swollen." On cross-examination, Officer Havens agreed that he did not witness the incident, and agreed that he believed he observed termite damage to the door. On redirect examination, he testified that he had no reason to believe that Banks was under the influence of any substances at the time of the incident.

¶ 12    Following the testimony of Officer Havens, counsel for the State asked for the body camera footage recording and Officer Havens's photographs to be admitted into evidence. The trial judge admitted them into evidence. The State then rested, and the trial judge asked, "I assume that you're asking the Court to proceed under the admissibility of prior inconsistent statements under the statute 725 ILCS 5/115-10.1 and asking me to consider that substantive with the body camera as shown?" Counsel for the State answered, "That is correct." The trial judge thereafter stated, "Of

5

course, the statute talks about first of all the statement is inconsistent with the testimony at the trial. Of course, she stated she could not remember. The witness was subject to cross-examination, that's clear." He subsequently added, "It does narrate, describe, or explain the events or conditions which the witness had personal knowledge of and also the statement was recorded." The trial judge then asked the State if it had "any case law where a witness states that they don't have any recollection of what happened on that occasion that allows me to consider that as substantive evidence?" The State responded, *inter alia*, that "professing that you do not recall is the equivalent of a denial," which meant that "the prior inconsistent statement" was admissible "as substantive evidence."

¶ 13   Following a recess, the trial reconvened on April 29, 2022. After hearing further arguments from the parties about whether the body camera footage recording could come in as substantive evidence, the trial judge ruled that it could. Thereafter, the defendant's mother testified for the defense that on May 11, 2021, the defendant was with her in Tennessee. On cross-examination, she conceded that she had not come forward with this information prior to the trial. Following closing arguments, the trial judge made the following findings and rulings: (1) it was "clear" to the trial judge that Banks "was not being truthful" when she testified that "she didn't remember very much about what happened on that occasion," (2) the body camera footage provided evidence that the defendant broke into the house and hit Banks "in the head," causing bleeding, (3) the alibi testimony of the defendant's mother was not credible, and (4) the evidence showed that the defendant was guilty, beyond a reasonable doubt, of all three charges against him. The trial judge entered judgments of conviction on all three offenses and, upon motion of the State, revoked the defendant's bond.

¶ 14   On May 13, 2022, the defendant's trial counsel filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Therein, she contended, *inter alia*, that after the conclusion of the defendant's bench trial, Banks "drafted, signed, and had notarized a statement" in which Banks claimed "that she lied to the police on May 11, 2021, because she was upset with the [d]efendant." The motion further asserted that in addition to this "new exculpatory evidence," the trial judge erred when he allowed the body camera footage in as substantive evidence. Attached to the motion as exhibit 1 was a signed and notarized statement from Banks in which she contended, *inter alia*, that the defendant did not commit the crimes of home invasion and domestic battery of which he was convicted. The "notary acknowledgment" that accompanied Banks's statement claimed that her statement was signed in Illinois, but also stated that the notary was certifying Banks's signature "under PENALTY OF PERJURY under the laws of the State of California."

¶ 15   On July 1, 2022, a hearing was held on the defendant's motion. At the outset of the hearing, the trial judge asked defense counsel if she intended "to put Ms. Banks on the stand to state that she lied to the police?" Defense counsel answered, "possibly," depending upon what answers Banks gave when questioned. The trial judge then stated, "Bring Ms. Banks in because before she takes the stand, I'm going to appoint an attorney for her so that she does not take the stand and incriminate herself, or at least she knows what she's doing." Banks entered the courtroom and was admonished by the trial judge, who appointed an attorney to represent her. The trial judge then ordered a recess so that Banks could confer privately with the attorney.

¶ 16   Following the recess, Banks testified that she attempted to "plead the fifth" at the defendant's bench trial because she gave the police a false statement about what happened on May 11, 2021. She agreed that after she was not allowed to "plead the fifth," she answered the questions

asked of her by stating that she did not remember what happened on May 11, 2021. She verified the statement that accompanied the defendant's motion as exhibit 1 and testified that no one forced her to write it. She testified that she wrote it because she did not want the defendant to be jailed as the result of her false accusation. She testified that her statement was correct, and that she did not see the defendant at all on May 11, 2021, he did not break into her house on that date, and he did not hit her on that date. Banks testified that she created the blood on her face by turning on a hot shower to create steam in the bathroom, then rubbing her nose until it bled. She did not explain her split, swollen lip. She testified that the doorframe was already damaged, and that the defendant did not damage it. On cross-examination, when asked if she was confronted by three women in the vestibule outside the courtroom prior to her present testimony, Banks testified that she did not know the women. She agreed, however, that she knew the women were members of the defendant's family. When asked how she got "the cut on [her] lip" on May 11, 2021, Banks answered only, "There was this cut on my lip." She did not testify with regard to the fact that her lip is obviously swollen in one of the photographs Officer Havens took and authenticated, which, as described above, was admitted into evidence at the bench trial and is part of the record on appeal. There was no redirect examination of Banks.

¶ 17    Following Banks's testimony, and argument by the parties, the trial judge stated that he remembered the defendant's bench trial "vividly." With regard to Banks's attempt to invoke her fifth amendment rights, and the State's answer to her that she could not invoke those rights, the trial judge stated as follows: "I didn't get involved because I didn't know why a victim would be asserting a Fifth Amendment right against self incrimination at that time." He added, "I didn't see any reason that she would have a Fifth Amendment right, but some interesting [issues] have been

8

brought up at this stage." He recessed the hearing to allow the parties to conduct further research, and provide further arguments, if desired.

¶ 18    The hearing reconvened on July 13, 2022. The trial judge noted that each party had filed a memorandum of law, and that he had considered the filings, and had conducted his own research as well. He then allowed each party to present additional oral argument. Thereafter, he stated that he believed he had "to make a determination as to [Banks's] credibility in this situation." He found that Banks was a "reluctant victim or reluctant witness," that she did not possess "a Fifth Amendment right against self-incrimination," and "that the testimony she has presented both before and after her live testimony was not credible." He further found that after considering all of the evidence, "the state did prove this case beyond a reasonable doubt based on the officer's video in this case." Accordingly, he denied the defendant's motion.

¶ 19    The defendant's sentencing hearing was held on August 18, 2022. The State presented evidence and argument in aggravation, mostly related to the defendant's extensive prior criminal history and other alleged prior criminal acts, and the defense presented evidence and argument in mitigation. The State argued for a 25-year sentence in this case. The defense argued for the minimum sentence of 6 years, to be served at 50%. Ultimately, the trial judge sentenced the defendant to 10 years of imprisonment on the home invasion conviction. He did not enter sentence on the two domestic battery convictions, which he thereafter found merged with the home invasion conviction. This timely appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21    The sole issue raised on appeal by the defendant is his contention that his trial "counsel was ineffective for allowing the State to admit testimonial evidence that should have been excluded by Marshena Banks' fifth amendment privilege against self-incrimination." To prevail on a claim

9

of ineffective assistance of trial counsel, a defendant must demonstrate that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defendant such that the defendant was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Both prongs of the *Strickland* test must be satisfied by the defendant for a finding of ineffectiveness. *People v. Veach*, 2017 IL 120649, ¶ 30. Ineffective assistance of counsel claims are generally reviewed *de novo*. *People v. Gunn*, 2020 IL App (1st) 170542, ¶ 91.

¶ 22 To establish deficient performance, the defendant must demonstrate that trial counsel's performance was "objectively unreasonable under prevailing professional norms." (Internal quotation marks omitted.) *Id.* ¶ 94. "A defendant is entitled to competent, not perfect, representation, and mistakes in trial strategy or judgment will not, of themselves, render the representation ineffective." (Internal quotation marks omitted.) *People v. Bell*, 2021 IL App (1st) 190366, ¶ 63. The defendant must overcome a strong presumption that trial counsel's inaction was based on sound trial strategy. *People v. Perry*, 224 Ill. 2d 312, 341-42 (2007). Trial strategy includes decisions on "what matters to object to and when to object." (Internal quotation marks omitted.) *Id.* at 344. The failure to object to testimony, therefore, may be a matter of sound trial strategy which does not necessarily establish deficient performance. *People v. Evans*, 209 Ill. 2d 194, 221 (2004).

¶ 23 When considering the second prong of the *Strickland* test, the defendant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gunn*, 2020 IL App (1st) 170542, ¶ 96. Where the evidence against the defendant is overwhelming, the reviewing court will not be persuaded that it is reasonably probable that a jury would have acquitted the defendant in the absence of counsel's

alleged errors. *Id.* A court may dispose of an ineffective assistance of counsel claim for insufficient prejudice before reaching the deficiency of counsel's performance. *People v. Pecoraro*, 144 Ill. 2d 1, 13 (1991).

¶ 24    As noted above, on appeal the defendant in this case claims that his trial "counsel was ineffective for allowing the State to admit testimonial evidence that should have been excluded by Marshena Banks' fifth amendment privilege against self-incrimination." In support of this proposition, appellate counsel for the defendant first contends that Banks's prior statement, presented to the trial judge as part of the body camera footage, "was the only incriminating evidence presented at trial." The defendant thereafter contends that because his trial "counsel did not object to Banks' testimony or ask the court to address Banks' attempt to invoke her fifth amendment protection," and instead "allowed Banks to testify that she did not remember anything from the time of the home invasion," the body camera footage was admitted as substantive evidence, and led to the conviction of the defendant. In terms of the prejudice that resulted from his counsel's failure to object, the defendant argues on appeal that if Banks had been "allowed to plead the fifth, and did not testify at trial," then the footage was not have been admissible, because "a witness's assertion of the fifth amendment privilege at trial is not an inconsistent statement under section 115-10.1."

¶ 25    We first note that the defendant does not object to the admission into evidence of the photographs taken by Officer Havens, which, as described above, show what Officer Havens characterized as (1) "the door that the suspect entered in through, forced it open, and that's the missing trim on the side of the doorjamb," (2) the blood on Banks's clothing, and (3) "her split lower lip, and swollen." We next note that the defendant's argument about Banks's testimony and the body camera footage of her statements to Officer Havens misapprehends the facts relevant to

11

this issue and the law applicable to those facts. As the State pointed out at trial, a witness's prior testimony does not have to directly contradict testimony given at trial to be considered inconsistent within the meaning of section 115-10.1. See, *e.g.*, *People v. Flores*, 128 Ill. 2d 66, 87 (1989). A professed memory loss can render a statement inconsistent with an earlier one, as can evasive answers, silence, or changes in position. *Id*. at 87-88. Accordingly, the problem with the defendant's argument on appeal is that by the time Banks attempted to invoke her fifth amendment rights during her testimony at the defendant's bench trial, she had already testified, as described above, that, *inter alia*, (1) she did not remember Officer Havens asking her what happened, and did not remember telling Officer Havens that Banks's "ex came and kicked in the door and jumped on" Banks, (2) she knew the defendant (whom she identified in court), and (3) she and the defendant had a child together. Moreover, she had already been asked if Officer Havens asked her (1) if she was cut anywhere after the incident in question, to which she had already testified that she did not remember, and (2) if the red stains on her clothing were paint or blood, to which she also had already testified that she did not remember. Thus, by the time she attempted to invoke her fifth amendment rights, she had already voluntarily produced testimony at trial that evinced a professed memory loss and was evasive, and that therefore was inconsistent with her statements in the footage, the latter of which were, along with Officer Havens's unobjected-to photographs of the damage to the door and of Banks's injuries, sufficient to convict the defendant of home invasion. In other words, by the time she attempted to invoke her fifth amendment rights, portions of the footage—portions that we reiterate were, along with Officer Havens's unobjected-to photographs of the damage to the door and of Banks's injuries, sufficient to convict the defendant of home invasion—were already admissible as substantive evidence to impeach her pre-invocation testimony with regard to, *inter alia*, the issue of whether she told Officer Havens that the defendant

12

kicked in the door and attacked Banks. In light of these facts, it would have been pointless for the defendant's trial counsel to object when Banks thereafter attempted to invoke her fifth amendment rights and the State told her she could not invoke them, because that would not have stopped the relevant footage and photographs from coming in as substantive evidence to impeach her pre-invocation testimony. It is axiomatic that failing to make a futile objection does not constitute ineffective assistance of counsel. See, *e.g.*, *People v. Holmes*, 397 Ill. App. 3d 737, 745 (2010). Accordingly, there is no merit to the issue raised by the defendant on appeal.

¶ 26     As a secondary reason for affirming the defendant's conviction and sentence, we agree with the State that it also would have been futile for the defendant's trial counsel to object because if counsel had done so, and Banks had successfully invoked her fifth amendment rights, then under section 115-10.2a(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10.2a(c) (West 2020))—which is a provision that applies specifically to domestic violence prosecutions—Banks would have been deemed unavailable as a witness, and her prior inconsistent statement would have been admissible as substantive evidence for that reason. Although the defendant claims in his reply brief on appeal that section 115-10.2a(c) conflicts with the Illinois Rules of Evidence—specifically Rule 804 (eff. Jan. 1, 2011)—the defendant cites no precedent supporting the existence of such a conflict. That deficiency notwithstanding, we do not agree that the provisions are in conflict. Rule 804 is a general rule of evidence; section 115-10.2a(c) is a specific rule that applies only to domestic violence prosecutions such as this one. Thus, there is no conflict between them in this case.

¶ 27                                        III. CONCLUSION

¶ 28     For the foregoing reasons, we affirm the defendant's conviction for home invasion, and his otherwise unchallenged 10-year sentence.

13

¶ 29    Affirmed.