**2022 IL 127222**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127222)

*In re* JOHNATHAN T., a Minor (The People of the State of
Illinois, Appellee, v. Johnathan T., Appellant).

*Opinion filed January 21, 2022.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Michael J. Burke,
Overstreet, and Carter concurred in the judgment and opinion.

**OPINION**

¶ 1     Johnathan T. was adjudicated a delinquent minor under the Juvenile Court Act
of 1987 (Act) (705 ILCS 405/5-701 (West 2018)) after he was found guilty of 10
counts of the offense of aggravated criminal sexual assault (720 ILCS 5/11-
1.30(b)(i) (West 2018)) in the circuit court of Massac County. Johnathan appealed
his adjudication and argued that the circuit court failed to conduct an inquiry into

his *pro se* claim of ineffective assistance of counsel. The appellate court affirmed. 2021 IL App (5th) 200247, ¶ 53.

¶ 2 We granted Johnathan's petition for leave to appeal in this court. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). For the reasons that follow, we affirm the appellate court judgment in part and reverse the judgment in part.

¶ 3                                    I. BACKGROUND

¶ 4 As the factual background was fully disclosed in the appellate court's decision, we will focus on the facts that are relevant to the issues presented in this court. In April 2018, the Massac County State's Attorney filed a delinquency petition against Johnathan alleging that he committed 10 acts of aggravated criminal sexual assault against B.A.B., a minor who was seven years old at the time of the incidents, in violation of section 11-1.30(b)(i) of the Criminal Code of 2012 (Code). 720 ILCS 5/11-1.30(b)(i) (West 2018).

¶ 5 The alleged acts occurred between August 1, 2017, and January 18, 2018, when Johnathan was 15 and 16 years old. Counts I through VII alleged that Johnathan committed acts of sexual penetration with B.A.B. by placing his penis in contact with B.A.B.'s anus. Counts VIII through X alleged that Johnathan committed acts of sexual penetration by placing his penis in contact with B.A.B.'s vagina. On November 15, 2019, the circuit court oversaw an adjudication hearing on the State's petition.

¶ 6                                A. Circuit Court Decision

¶ 7 On December 4, 2019, the circuit court entered an order finding Johnathan guilty on all counts. Thereafter, the circuit court directed the probation department, pursuant to section 5-701 of the Act, to prepare a social investigation report (SIR) and ordered Johnathan to undergo a sex offender evaluation prior to a dispositional hearing. 705 ILCS 405/5-701 (West 2018) (social investigation report shall be prepared upon the order of the court). During the sex offender evaluation, the evaluator asked Johnathan, "What kind of job is your lawyer doing?" Johnathan responded, "We don't talk. I'm never prepared for the stand. He does not answer

calls." The sex offender evaluation, which included Johnathan's answer to the evaluator's question about his attorney, and the SIR were filed and reviewed by the circuit court prior to the dispositional hearing.

¶ 8    In August 2020, the circuit court conducted the dispositional hearing. At the conclusion of the hearing, the court found that it was in the best interest of Johnathan and the public that Johnathan be made a ward of the court. The court found that probation would depreciate the seriousness of the offenses and would not serve the best interests of Johnathan and the public. The court stated as follows:

"Based upon the social investigation report and the sex offender report, I think the Department of Juvenile Justice is the least restrictive alternative based on the evidence, and his secure confinement is necessary based upon services in the Department of Juvenile Justice which will meet his individualized needs, his criminal background, physical, mental, emotional help, where reasonable efforts have been made to prevent, to eliminate, the need for removal from the home is in his best interest."

¶ 9    The circuit court sentenced Johnathan to the Department of Juvenile Justice for an intermediate period not to exceed his twenty-first birthday. Johnathan appealed the adjudication of delinquency and his sentence.

¶ 10                              B. Appellate Court Decision

¶ 11   On appeal, Johnathan argued that the circuit court erred because it did not conduct a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), regarding his *pro se* claim of ineffective assistance of counsel. The appellate court explained that in *Krankel* this court established a procedure that circuit courts must follow when a defendant makes a *pro se*, posttrial claim of ineffective assistance of counsel. 2021 IL App (5th) 200247, ¶ 18.

¶ 12   First, the appellate court observed that it had to address the threshold question of whether the *Krankel* procedure applies in juvenile delinquency proceedings. *Id.* ¶ 22. The appellate court relied on *In re T.R.*, 2019 IL App (4th) 190051, ¶ 29, where the court observed that the purpose of *Krankel* applies equally to juvenile delinquency cases and that juveniles who have been adjudicated delinquent have a

very limited opportunity to raise ineffective assistance of counsel claims. 2021 IL App (5th) 200247, ¶ 23. The appellate court agreed with the *T.R.* court's analysis. *Id.* ¶ 24.

¶ 13 The appellate court recognized that, although juvenile delinquency proceedings are civil in nature, minors in delinquency proceedings have a constitutional right to effective assistance of counsel. *Id.* The court noted that in *People v. Austin M.*, 2012 IL 111194, ¶ 76, this court stated that, "[w]ith the exception of the right to a jury trial, the fourteenth amendment to the United States Constitution extends to delinquent minors all of the basic rights enjoyed by criminal defendants." See 2021 IL App (5th) 200247, ¶ 24. Accordingly, the appellate court found no basis to exclude this court's *Krankel* procedure from being applied in delinquency proceedings. *Id.*

¶ 14 Second, the appellate court had to determine whether Johnathan's statement in the SIR should have triggered a *Krankel* inquiry. The appellate court observed that this court, in *People v. Moore*, 207 Ill. 2d 68, 79 (2003), held that to trigger the *Krankel* procedure a defendant must bring his or her claim to the trial court's attention. 2021 IL App (5th) 200247, ¶ 52. The appellate court determined that Johnathan's answering a question during the sex offender evaluation with statements about his attorney did not constitute bringing a claim to the circuit court's attention. *Id.*

¶ 15 The appellate court then clarified that its holding was not that statements in a sex offender evaluation can never trigger *Krankel*. *Id.* ¶ 53. The court found that considering the vagueness of Johnathan's statements, together with the context in which Johnathan made the statements, it could not fault the circuit court for failing to conduct a *Krankel* inquiry. *Id.* The court specifically stated that

"[n]othing in the record suggests that by answering the social worker's question Johnathan T. was attempting to bring complaints about his attorney specifically to the circuit court's attention, and the circuit court would not have been expected to discern a *Krankel* complaint, as the report was not designed to elicit such information." *Id.*

¶ 16 The appellate court held that Johnathan's vague statements made during the sex offender evaluation, without more, were insufficient to trigger a *Krankel* inquiry.

*Id.* Finally, the appellate court rejected Johnathan's argument that the State failed to prove he was guilty of aggravated criminal sexual assault as alleged in count I. *Id.* ¶ 55.

¶ 17                                                    II. ANALYSIS

¶ 18        Before this court, Johnathan argues that the circuit court erred when it failed to conduct a preliminary *Krankel* inquiry. Johnathan contends that the *Krankel* procedure should apply in juvenile delinquency proceedings. Johnathan also contends that he made a clear claim of ineffective assistance of counsel when he answered the evaluator's question in the sex offender evaluation regarding his counsel's performance by stating, "We don't talk. I'm never prepared for the stand. He does not answer calls."

¶ 19        The State agrees that the *Krankel* procedure should apply in juvenile delinquency proceedings. However, the State argues that the *Krankel* procedure is inapplicable here because Johnathan had retained counsel. Alternatively, the State argues that Johnathan's statement in response to the evaluator's question did not trigger the circuit court's obligation to conduct a preliminary inquiry. According to the State, the circuit court was not made aware of Johnathan's ineffectiveness of counsel claim because it was in the sex offender evaluation and was nothing more than a general complaint.

¶ 20                                               A. Standard of Review

¶ 21        Whether the *Krankel* procedure applies to juvenile delinquency proceedings presents a question of law that is reviewed *de novo*. *People v. Custer*, 2019 IL 123339, ¶ 25; *People v. Taylor*, 237 Ill. 2d 68, 75 (2010). Whether a *pro se* juvenile's claim of ineffective assistance of counsel memorialized in a court-ordered SIR triggered the circuit court's duty to conduct a preliminary *Krankel* inquiry is also a question of law that is reviewed *de novo*. *Custer*, 2019 IL 123339, ¶ 25.

¶ 22                          B. Preliminary *Krankel* Inquiry

¶ 23      The common-law procedure that has developed from this court's decision in *Krankel* governs a *pro se* posttrial claim alleging ineffectiveness of counsel. *People v. Jackson*, 2020 IL 124112, ¶ 95 (citing *People v. Roddis*, 2020 IL 124352, ¶ 34, and *People v. Patrick*, 2011 IL 111666, ¶ 29). This procedure allows the trial court to decide whether independent counsel is necessary to argue a defendant's *pro se* posttrial ineffective assistance claims at a full *Krankel* hearing. *Patrick*, 2011 IL 111666, ¶ 39; *Moore*, 207 Ill. 2d at 77-78. It is intended to promote consideration of *pro se* ineffective assistance claims in the trial court, to create a record, and to limit issues on appeal. *Patrick*, 2011 IL 111666, ¶ 41; see *Roddis*, 2020 IL 124352, ¶ 34; *People v. Jolly*, 2014 IL 117142, ¶¶ 29, 38.

¶ 24      "The *Krankel* procedure 'is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel.' " *Jackson*, 2020 IL 124112, ¶ 96 (quoting *Jolly*, 2014 IL 117142, ¶ 29). A *pro se* defendant only has to bring his claim to the trial court's attention. The defendant is not required to file a written motion in the trial court but may raise the issue orally or through a letter or note to the court. *Id.* (citing *People v. Ayres*, 2017 IL 120071, ¶ 11).

¶ 25                          C. The *Krankel* Procedure Applies in
Juvenile Delinquency Proceedings

¶ 26      In addressing Johnathan's ineffective assistance of counsel claim, as the appellate court recognized, the first issue is whether this court's *Krankel* procedure applies in juvenile delinquency proceedings. 2021 IL App (5th) 200247, ¶ 22. *Krankel* involved a *pro se* claim of ineffective assistance of counsel in a criminal proceeding. *Krankel*, 102 Ill. 2d at 187. Although juvenile delinquency proceedings are civil in nature (see *In re Jonathon C.B.*, 2011 IL 107750, ¶ 96), minors in delinquency proceedings have a constitutional right to effective assistance of counsel (*Austin M.*, 2012 IL 111194, ¶ 74).

¶ 27      In addition, section 5-170 of the Act, when discussing a minor's right to counsel in a delinquency proceeding, provides as follows: "(b) In a judicial proceeding under this Article [(Article V, dealing with delinquent minors)], a minor may not waive the right to the assistance of counsel in his or her defense." 705 ILCS 405/5-

170(b) (West 2018); *Austin M.*, 2012 IL 111194, ¶ 72. "Thus, according to the plain language of the Act, a minor in a delinquency proceeding has a nonwaivable right to be represented by a defense attorney." (Emphasis omitted.) *Austin M.*, 2012 IL 111194, ¶ 73.

¶ 28 The unconditional right to counsel and the effective assistance of counsel in delinquency proceedings was first recognized by the United States Supreme Court in *In re Gault*, 387 U.S. 1 (1967). *Austin M.*, 2012 IL 111194, ¶¶ 73-74. Regarding a minor's right to counsel, the *Gault* Court held:

> "A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child 'requires the guiding hand of counsel at every step in the proceedings against him.' " *Gault*, 387 U.S. at 36 (quoting *Powell v. Alabama*, 287 U.S. 45, 69 (1932)).

¶ 29 In *Austin M.* this court made clear that "a juvenile's right to counsel in a delinquency proceeding is firmly anchored in both due process and our statutory scheme." *Austin M.*, 2012 IL 111194, ¶ 76; see *Gault*, 387 U.S. at 30-31, 33, 41, 51, 55.

> "Moreover, since *Gault*, the need for zealous advocacy to vindicate the constitutional rights of minors in delinquency proceedings has become even greater. With the Juvenile Justice Reform Provisions of 1998, along with a number of other amendments to the Juvenile Court Act since 1999, our legislature has transformed the Act, making juvenile delinquency proceedings more akin to criminal prosecutions." *Austin M.*, 2012 IL 111194, ¶ 76.

See also *People v. Taylor*, 221 Ill. 2d 157, 165 (2006). "Although rehabilitation is still an important goal of delinquency proceedings, they have become more punitive and less confidential." *Austin M.*, 2012 IL 111194, ¶ 76; *Taylor*, 221 Ill. 2d at 167 (finding that the 1998 revisions to the Act "represent[ ] a fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting

the public and holding juvenile offenders accountable for violations of the law" (citing *In re A.G.*, 195 Ill. 2d 313, 317 (2001))).

¶ 30 Moreover, this court recognizes that those minors who are found delinquent may be subject to serious, life-altering consequences. *Austin M.*, 2012 IL 111194, ¶ 76. In *Jonathon C.B.*, 2011 IL 107750, ¶¶ 88, 101-06, this court observed that minors adjudicated guilty for the commission of any felony offense must provide a DNA sample to the Illinois Department of State Police, pursuant to section 5-4-3(a)(3.5) of the Unified Code of Corrections (730 ILCS 5/5-4-3(a)(3.5) (West 2006)). Further, the collateral consequences faced by juveniles under the Act, which lessened confidentiality, have been amended to permit the public access to the personal information of juveniles adjudicated guilty of first degree murder, attempted first degree murder, aggravated criminal sexual assault, or criminal sexual assault. *Jonathon C.B.*, 2011 IL 107750, ¶ 88 (citing 705 ILCS 405/5-901(5)(a) (West 2006)). Juveniles adjudicated guilty of a criminal sexual offense also are required to register under the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 2006)). *Jonathon C.B.*, 2011 IL 107750, ¶ 88.

¶ 31 Furthermore, juveniles do not have the right to file postconviction petitions because the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) does not apply to delinquent minors who are neither convicted nor imprisoned. See *Taylor*, 221 Ill. 2d at 168-69; *T.R.*, 2019 IL App (4th) 190051, ¶¶ 29, 31; *In re Alonzo O.*, 2015 IL App (4th) 150308, ¶ 30. Thus, juveniles are without access to collateral review of their claims of ineffective assistance of counsel.

¶ 32 Considering the above, it is evident that due process and the Act require that juveniles in delinquency proceedings claiming ineffective assistance of counsel have available to them a preliminary *Krankel* inquiry. Consequently, we agree with the appellate court and hold that the *Krankel* procedure applies in juvenile delinquency proceedings. 2021 IL App (5th) 200247, ¶¶ 21-24.

¶ 33                     D. The *Krankel* Procedure Applies to
                               Retained Counsel

¶ 34 We now address the State's contention that a preliminary *Krankel* inquiry was not required in this case because the narrow purpose of *Krankel*, allowing the circuit

court to decide whether to appoint independent counsel, is inapplicable where Johnathan had retained counsel. The State relies on *People v. Pecoraro*, 144 Ill. 2d 1, 15 (1991), for the proposition that the court cannot interfere with the relationship between Johnathan and his retained counsel. In addition, the State argues that Johnathan gave no indication to the court that he was seeking to retain new counsel or desired to be appointed counsel.

¶ 35     In *Pecoraro*, the adult criminal defendant filed posttrial motions, both *pro se* and through his counsel, alleging ineffective assistance of counsel, and the trial court denied the motions. *Id.* at 14-15. On appeal, the defendant argued that, under *Krankel*, the trial court should have appointed independent counsel to argue his motions alleging ineffective assistance. *Id.* at 14. This court distinguished *Krankel* and held that it did not apply, stating:

> "Unlike *Krankel*, where defendant was represented by an appointed public defender at both trial and post-trial motions, defendant Pecoraro retained private counsel to represent him at trial and in post-trial motions. It was not within the trial court's rubric of authority to advise or exercise any influence or control over the selection of counsel by defendant, who was able to, and did, choose counsel on his own accord. [Citation.] Moreover, the trial judge could not force defendant to retain counsel other than that chosen by defendant. [Citation.] Defendant and his counsel were the only parties who could have altered their attorney-client relationship. Defendant could have retained other counsel to represent him prior to the hearing of his post-trial motions." *Id.* at 15.

¶ 36     This court concluded, "*Krankel* is a fairly fact-specific case, and the circumstances in the case at hand, where defendant retained his own private counsel and did not request that he be represented by other counsel, do not warrant the application of *Krankel*." *Id.*

¶ 37     In the years since *Pecoraro*, the appellate court districts have reached conflicting conclusions about the scope of its apparent holding and have held that the *Krankel* procedure does not apply or does not fully apply to private counsel. Compare *People v. Shaw*, 351 Ill. App. 3d 1087, 1092 (4th Dist. 2004) (*Krankel* does not apply to private counsel), with *People v. Willis*, 2013 IL App (1st) 110233, ¶ 71 (applying *Krankel* where the defendant was represented by private counsel),

and *People v. Johnson*, 227 Ill. App. 3d 800, 810 (1st Dist. 1992) (rejecting that under *Pecoraro*, because defendant retained counsel, he could not have new counsel appointed for him).

¶ 38 We find the special concurrence in *Taylor*, 237 Ill. 2d at 78-81 (Burke, J., specially concurring), to be persuasive. In *Taylor*, Justice Burke's special concurrence recognized that the majority assumed, without deciding, that *Krankel* applied to privately retained counsel since it addressed the merits of defendant's claim on a factual basis. The special concurrence stated that, "rather than simply assuming that *Krankel* applies to privately retained counsel, I would address the conflict in the appellate court and clarify our holding in *Pecoraro*." *Id.* at 78.

¶ 39 The special concurrence further noted that to read *Pecoraro* as distinguishing between appointed and retained counsel would create a conflict with *Cuyler v. Sullivan*, 446 U.S. 335 (1980). *Taylor*, 237 Ill. 2d at 79. In *Sullivan*, involving a federal *habeas corpus* claim, the respondent alleged ineffective assistance of counsel based on conflicts of interest arising from privately retained counsel's representation of multiple defendants. *Sullivan*, 446 U.S. at 342. The petitioners argued, in response, that the alleged failings of retained counsel could not provide the basis for a writ of *habeas corpus*. *Id.* The Court rejected this argument:

> "A proper respect for the Sixth Amendment disarms petitioner[s'] contention that defendants who retain their own lawyers are entitled to less protection than defendants for whom the State appoints counsel. We may assume with confidence that most counsel, whether retained or appointed, will protect the rights of an accused. But experience teaches that, in some cases, retained counsel will not provide adequate representation. The vital guarantee of the Sixth Amendment would stand for little if the often uninformed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection. Since the State's conduct of a criminal trial itself implicates the State in the defendant's conviction, we see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers." *Id.* at 344-45.

¶ 40 The *Taylor* special concurrence reasoned:

"To read *Pecoraro* as prohibiting a *Krankel* inquiry simply because counsel was retained would conflict with Supreme Court authority and would be a violation of the sixth amendment right to effective assistance of counsel. Accordingly, I would resolve the conflict in the appellate court by clarifying that *Pecoraro* does not stand for the proposition that *Krankel* only applies to appointed counsel." *Taylor*, 237 Ill. 2d at 81.

We agree.

¶ 41 In addition, we find the State's reliance on *Pecoraro* is misplaced because its facts are distinguishable from the facts here. In *Pecoraro* the court held a full hearing into the adult defendant's *pro se* claims of ineffective assistance of retained counsel. *Pecoraro*, 144 Ill. 2d at 14. Here, the court did not conduct any inquiry into Johnathan's *pro se* claims.

¶ 42 The State also argues that a preliminary inquiry was not necessary because Krankel was designed to remedy a problem faced only by defendants who are appointed counsel, as the *Krankel* remedy of replacing counsel is already available to a defendant who retains counsel. In addition, the State maintains that a circuit court cannot replace privately retained counsel.

¶ 43 We observe that the purpose of the *Krankel* procedure is to establish a factual basis of the defendant's *pro se* claim of ineffective assistance of counsel, to create a record, and to limit the issues on appeal. *Ayres*, 2017 IL 120071, ¶¶ 13, 24 (noting a *Krankel* proceeding is necessary to facilitate the trial court's full consideration of a defendant's *pro se* claim and thereby potentially limit issues on appeal); *Moore*, 207 Ill. 2d at 79. The *Krankel* procedure is not designed to solely remedy problems faced by indigent defendants. The trial court first determines if there is possible merit to the *pro se* claim and then may inquire whether defendant needs new counsel appointed or can retain new counsel. *Roddis*, 2020 IL 124352, ¶ 35; *Krankel*, 102 Ill. 2d at 187-89. In the evaluation of a claim of ineffective assistance of counsel, no distinction is made between court-appointed counsel and privately retained counsel. *People v. Royse*, 99 Ill. 2d 163, 169 (1983) (finding that the same standard of competency should be applied to retained and appointed counsel); *People v. Johnson*, 227 Ill. App. 3d 800, 810 (1992) (citing *McCoy v. Court of Appeals*, 486 U.S. 429, 438 (1988)). Moreover, it is equally inappropriate for retained counsel to argue his incompetence at a posttrial hearing as it is for

appointed counsel. See *Moore*, 207 Ill. 2d at 78; *Pecoraro*, 144 Ill. 2d at 23 (Clark, J., dissenting) (citing *People v. Nitz*, 143 Ill. 2d 82, 134-35 (1991)). Consequently, the intent of a preliminary *Krankel* inquiry, allowing the trial court to decide whether there has been neglect on the part of counsel, is served whether counsel had been retained or appointed. *Jackson*, 2020 IL 124112, ¶ 95; *Ayres*, 2017 IL 120071, ¶ 24; *Patrick*, 2011 IL 111666, ¶ 39.

¶ 44    Furthermore, we find Johnathan's situation distinct from adult criminal defendants who hire their own attorneys. Johnathan's attorney was hired by his father. Additionally, Johnathan's status as a juvenile, with limited financial resources and limited experience in criminal and juvenile delinquency proceedings, made him unaware, like adult criminal defendants, of the need to request appointment of new counsel. See *Gault*, 387 U.S. at 36; *Austin M.*, 2012 IL 111194, ¶ 76 (finding that, since *Gault*, the need for zealous advocacy to vindicate the constitutional rights of minors in delinquency proceedings has become even greater); *Willis*, 2013 IL App (1st) 110233, ¶ 70 (finding that the defendant was a minor at the time of trial and could not reasonably be expected to raise the issue of trial counsel's ineffectiveness on his own and that a juvenile would be expected to be more at the mercy of counsel than an adult and less likely to be cognizant and aware of his legal rights). Accordingly, we find that the *Krankel* procedure applies equally to retained and appointed counsel.

¶ 45    E. Johnathan's Statements in the Sex Offender Evaluation
Memorialized in the SIR Gave Notice to the Court of His
Clear Claim of Ineffective Assistance of Counsel

¶ 46    In the alternative, the State argues that Johnathan was not entitled to a preliminary *Krankel* inquiry because his vague allegations of ineffective assistance of counsel were insufficient to alert the circuit court to his claim. The State maintains that Johnathan's statements did not provide detail sufficient to imply the invocation of a violation of his right to effective assistance of counsel. According to the State, the statements made in response to the evaluator's question during the sex offender risk evaluation were nothing more than a general complaint. We disagree.

¶ 47    This court has found that when a defendant brings a clear claim asserting ineffective assistance of counsel, either orally or in writing, this is sufficient to trigger the circuit court's duty to conduct a preliminary *Krankel* inquiry. *Jackson*, 2020 IL 124112, ¶ 96; *Ayres*, 2017 IL 120071, ¶ 18. Such a ruling comports with our post-*Krankel* jurisprudence. *Jackson*, 2020 IL 124112, ¶ 96; *Moore*, 207 Ill. 2d at 79 (finding that a *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention); *Taylor*, 237 Ill. 2d at 76 (same).

¶ 48    We recognize that in a juvenile delinquency proceeding, instead of a presentence investigation report (PSI), the Act requires that the probation department prepare an SIR. 705 ILCS 405/5-620, 5-701 (West 2018). Section 5-701 of the Act provides that any minor found to be guilty of a sex offense shall be required as part of the social investigation to submit to an evaluation. *Id.* § 5-701. Section 1910.130(b) of Title 20 of the Illinois Administrative Code provides that the purposes of the sex offender evaluation are as follows: (1) to assess overall risk to the community; (2) to provide protection for victims and potential victims; (3) to provide a written clinical summary of the juvenile's strengths, risks, and deficits, including any and all comorbid conditions or developmental disorders; (4) to identify and document treatment and developmental needs; (5) to determine amenability for treatment; (6) to identify individual differences, potential barriers to treatment, and static and dynamic risk factors; (7) to make recommendations for the management and supervision of the juvenile; and (8) to provide information that can help identify the type and intensity of community-based treatment or the need for a more restrictive setting. 20 Ill. Adm. Code 1910.130(b) (2009). The evaluation of a juvenile sex offender includes the presentence and postadjudication reports. 20 Ill. Adm. Code 1910.140(b) (2009). The evaluation focuses on dangerousness, risk, placement, and amenability to treatment. *Id.* We acknowledge that the focus of these reports and evaluations does not specifically include screening for ineffectiveness of counsel claims. However, because a defendant need only bring the claim to the attention of the circuit court, we agree with the appellate court that claims of ineffective assistance of counsel can be found in the sex offender evaluation. See 2021 IL App (5th) 200247, ¶ 53.

¶ 49    We find analogous the PSI required in adult criminal proceedings. 730 ILCS 5/5-3-1 (West 2018). The purpose of the requirement of a PSI " 'is to insure that the trial judge will have all necessary information concerning the defendant before

- 13 -

sentence is imposed.' " *People v. Harris*, 105 Ill. 2d 290, 299 (1985) (quoting *People v. Youngbey*, 82 Ill. 2d 556, 564 (1980)). Pursuant to section 5-3-2(a) of the Unified Code of Corrections (730 ILCS 5/5-3-2(a) (West 2018)), the PSI sets forth the defendant's history of delinquency and criminality, physical and mental history and condition, family situation and background, education, and occupation and information regarding special resources within the community which might be available to assist the defendant's rehabilitation. Of note is that the PSI is to be presented to and considered by the court. *Id.* § 5-3-1. The focus of the PSI does not specifically include screening for an ineffectiveness claim, but courts have found such a claim in a PSI.

¶ 50    In *People v. Craig*, 2020 IL App (2d) 170679, ¶ 18, the State argued that the claim of ineffective assistance of counsel was not properly presented to the court, as the " 'statements were buried in the text of a PSI report prepared by court services, not defendant.' " The appellate court determined that the "PSI was prepared by court services, but the statements at issue were unquestionably those of defendant and, as noted, made a clear claim of ineffectiveness. Moreover, a PSI is prepared for the court, and the court is required to consider it." (Emphasis omitted.) *Id.* The appellate court observed that the record made clear that the trial court read the PSI. *Id.* "Given that the court read the allegations of ineffectiveness, which were made by defendant to a court employee for inclusion in a report prepared specifically for the court, an inquiry under *Krankel* was warranted." *Id.*; *People v. Sherman*, 2020 IL App (1st) 172162, ¶¶ 42-44 (finding that defendant's ineffectiveness claim in a PSI, intended to be read by the trial court, triggered a *Krankel* inquiry).

¶ 51    Similarly, the sex offender evaluation and the SIR were required by the Act (705 ILCS 405/5-701) (West 2018)) and requested by the circuit court, the statements were made by Johnathan to a court employee for inclusion in the reports, and the record makes clear that the circuit court read the reports.

¶ 52    In addition, we find Justice Wharton's dissent in *People v. Banks*, 2021 IL App (5th) 190129-U, ¶¶ 29-30 (Wharton, J., dissenting), to be persuasive. Justice Wharton disagreed with the majority's conclusion that the defendant did not present the trial court with a clear claim of ineffective assistance of counsel because the defendant indicated in his statements that counsel failed to do something the

- 14 -

defendant alleges could have led to exculpatory evidence. *Id.* ¶ 29. The dissent believed that this was adequate to trigger the court's duty to conduct a preliminary *Krankel* inquiry. *Id.*

¶ 53 The dissent observed as follows:

"The majority correctly notes that a trial court's duty to conduct a preliminary inquiry under *Krankel* is only triggered when the defendant clearly raises the issue of counsel's performance with the court. [Citation.] In determining whether this standard has been met, we must not elevate form over substance. [Citation.] Thus, a defendant does not need to explicitly label his claim as one of ineffective assistance of counsel. [Citation.] Similarly, I do not believe it is necessary for a defendant to explicitly state he is dissatisfied with counsel's performance. Rather, I believe it is sufficient for a defendant to alert the court that counsel failed to do something that should have been done." *Id.* ¶ 30.

We agree.

¶ 54 Johnathan clearly stated that his attorney was not doing something that he should have been doing. A juvenile in a juvenile delinquency proceeding need do nothing more than bring his *pro se* claim to the attention of the court. See *Jackson*, 2020 IL 124112, ¶ 96; *Ayres*, 2017 IL 120071, ¶ 11. Johnathan did so. Thus, a preliminary *Krankel* inquiry was warranted. See *Patrick*, 2011 IL 111666, ¶ 43. Accordingly, the circuit court erred in failing to conduct any inquiry into the factual basis of Johnathan's allegations.

¶ 55                                    III. CONCLUSION

¶ 56 In sum, we find that the *Krankel* procedure applies in juvenile delinquency proceedings. Considering the purpose of the *Krankel* procedure, we find that it applies equally to retained and appointed counsel. We also find that Johnathan's statements in the sex offender evaluation were a clear claim of ineffective assistance of counsel and, once memorialized in the SIR and tendered to the court, gave notice to the court that triggered a *Krankel* inquiry. Accordingly, we hold that the circuit court erred in not conducting a preliminary *Krankel* inquiry.

¶ 57    Consequently, we affirm the judgment of the appellate court in part and reverse the judgment in part. We reverse the judgment of the circuit court and remand to the circuit court with directions to conduct a preliminary *Krankel* inquiry.

¶ 58    Appellate court judgment affirmed in part and reversed in part.

¶ 59    Circuit court judgment reversed.

¶ 60    Cause remanded with directions.