NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231281-U

NO. 4-23-1281

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 10, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Knox County |
| BRANDON S. WILSON, | ) | No. 22CF116 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Andrew J. Doyle, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Cavanagh and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court's appointment of new counsel without a *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (West 1984)) after defendant raised a *pro se* posttrial claim of ineffective assistance was harmless error.

¶ 2    Following a jury trial, defendant, Brandon S. Wilson, was convicted of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2022)) and sentenced to 48 years in prison. He appeals, arguing the trial court erred when addressing his *pro se* posttrial claim of ineffective assistance of counsel by appointing new counsel to represent him without first conducting a *Krankel* inquiry into his claims (see *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (West 1984)). We affirm.

¶ 3                                        I. BACKGROUND

¶ 4    In July 2022, the State filed a second amended information, charging defendant

with attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2022)), aggravated battery (*id.* § 5/12-3.05(e)(1), (h)), aggravated discharge of a firearm (*id.* § 24-1.2(a)(2), (b)), and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). It alleged that on or about March 3, 2022, defendant, who was a convicted felon, possessed a firearm on or about his person and shot the victim, Walter A. Brown, III, "in his hip area."

¶ 5        In January 2023, defendant's jury trial was conducted. At trial, defendant was represented by privately retained counsel, attorney Gary Morris. The State's evidence showed that on March 3, 2022, Brown was shot inside his apartment building in Galesburg, Illinois. Immediately after the shooting, Brown identified defendant as the shooter by name to both a neighbor and the police officers who arrived on the scene. He also made an in-court identification of defendant as the person who shot him. Brown testified that at the time of the shooting, he had known defendant for three or four months through Facebook and mutual friends. The two had spent time together, Brown had defendant's phone number, and the two communicated through social media.

¶ 6        Prior to the shooting, Brown's motorcycle was stolen and vandalized and his apartment was broken into. Brown learned from others that defendant was responsible for what had occurred and, on the day of the shooting, communicated with defendant through Facebook. Defendant told Brown he was busy cooking a pizza and Brown invited defendant to "[c]ome on over" and bring some pizza with him. Brown testified defendant arrived at his apartment building with another individual, whom Brown did not know. Brown spoke with defendant and the other man outside of his apartment, where there was a landing and a staircase. Brown was seated on the top step, while defendant and the other man stood at the bottom of the stairs. Brown testified defendant handed him some pizza that was between two paper plates and admitted breaking into

Brown's apartment and stealing Brown's motorcycle. Defendant then "pulled a gun out of his pocket" and pointed it at Brown's face. Brown stated defendant pulled the trigger, but the gun misfired. As Brown stood up, defendant pulled the trigger a second time and shot Brown in the abdomen before fleeing the scene.

¶ 7        The State presented evidence of correspondence between Facebook profiles linked to defendant and Brown, which corroborated Brown's testimony. Additionally, an individual who resided in a different building in Brown's apartment complex testified he observed two men, one of whom he identified as defendant, exiting Brown's apartment building around the time of the shooting and quickly walking away from the building. Finally, the State's evidence also showed that defendant's fingerprint was found on a piece of tape affixed to the paper plates that Brown reported defendant had given to him immediately prior to the shooting.

¶ 8        Ultimately, the jury found defendant guilty of each charged offense. In February 2023, defendant, with the aid of attorney Morris, filed a motion for new trial or, in the alternative, a judgment notwithstanding the verdict. In April 2023, Morris filed a motion to withdraw as counsel, alleging he had been "verbally terminated" by defendant. On April 13, 2023, the trial court conducted a hearing on the motion to withdraw, and Morris informed the court that defendant wanted him to withdraw from the case. Upon questioning by the court, defendant affirmed that he had directed Morris to withdraw due to "all the inadequate counsel" he had received, and stated he "was hoping [he] could get a Public Defender back." The court granted Morris's motion and appointed the public defender's office to represent defendant. Thereafter, defendant was represented by attorney James Harrell.

¶ 9        In May 2023, the trial court conducted a hearing in the case, and attorney Harrell informed the court that defendant had advised him of errors defendant believed had occurred at

trial "with the other attorney that was involved." Harrell asserted he needed to review the trial transcripts with defendant and that he would possibly file an amended motion for a new trial. On Harrell's motion, the court continued the matter and ordered the preparation of the jury trial transcripts.

¶ 10    In June 2023, Harrell filed a motion to continue the matter, alleging that defendant "claimed ineffective assistance of *** prior counsel during trial and after" but that transcripts in the case had not yet "been reviewed or prepared." During a hearing the same month, the trial court noted that the transcripts had not yet been received, "but they're being worked on," and it asked Harrell if he wanted to proceed on his motion to continue. Harrel responded as follows:

> "Well, Judge, I realize this was just set for a status, but I did file a motion to continue just to cover. Obviously, the transcripts are something I'm going to need because I indicated, I think, at the last hearing that my client had brought up some allegations of ineffective assistance of counsel at the hearing—at the trial. I, obviously, wasn't there at the trial so I want to review that. I met with [defendant] again this week. He had some other things that he wants to have in the motion, but I don't think I'd be ethically responsible if I didn't look through the transcripts myself."

The court set the matter for sentencing the following month, stating that although there were "issues that need[ed] to be address," it also had "to keep moving the case forward." The court scheduled the hearing on defendant's motion for a new trial on the same date, stating that if transcripts were not received by the new date, defendant could file a motion to continue and have the posttrial motion set for another date.

¶ 11    The record reflects the trial court and attorney Harrell further discussed defendant's

- 4 -

ineffective-assistance claims and whether a *Krankel* inquiry by the court was required. The following colloquy occurred:

"THE COURT: And I'm deeming [defendant's ineffective-assistance-of-counsel claims] to have been raised based on the statements [defendant] made prior as well as in your motion to continue, but I'm saying that a *Krankel* inquiry does not need to move forward because a *Krankel* inquiry essentially would be on whether or not we're going to have a reason to remove that attorney and bring another attorney in to discuss issues that occurred in the ineffective assistance of counsel, and that's—that doesn't need to happen because he was a private attorney and he's no longer on the case. Now, if there's still claims out there, those claims can be raised via appeal, via a motion for new trial, whatever method you want to bring them before the Court. I just want to—I just want to discuss that a *Krankel* inquiry was not necessary given the circumstances as we sit here today.

MR. HARRELL: I think I got you, Judge. I think you're indicating that, obviously, a *Krankel* hearing is for replacement of counsel. So if there was something that [prior counsel] did wrong, then the Court would be actually inquiring, but since [prior counsel] already has been removed, if there was a *Krankel* hearing, it probably should have been done earlier, but I'm still able to bring up any ineffective assistance of counsel issues that I feel appropriate to be addressed.

THE COURT: Correct."

¶ 12    In July 2023, the trial court conducted defendant's sentencing hearing. At the outset of the hearing, Harrell, again, noted that defendant raised ineffective-assistance claims with respect

to the representation he received from his prior counsel. Harrell stated that the previous week, he received the necessary transcripts for reviewing those claims and requested a continuance to file an amended motion for a new trial. The court granted the motion, setting a date within 30 days for the motion to be filed. It then proceeded with defendant's sentencing. Ultimately, the court sentenced defendant to 48 years in prison for attempted first degree murder and vacated the remaining counts against him.

¶ 13 On July 31, 2023, defendant, with Harrell's aid, filed both a motion to reconsider his sentence and a motion for new trial. In the motion for new trial, defendant asserted he had not been proven guilty beyond a reasonable doubt, his trial counsel was ineffective, and his due process and constitutional rights had been violated. In August 2023, Harrell amended both motions. Relevant to this appeal, on August 18, 2023, he filed a second amended motion for new trial on defendant's behalf, raising numerous claims of error, including 18 claims that Morris provided ineffective assistance. In September 2023, the State filed a response to defendant's second amended motion for new trial.

¶ 14 In November 2023, the trial court conducted a hearing, and the parties presented argument to the court with respect to both defendant's second amended motion for a new trial and his amended motion to reconsider sentence. In addressing the former, Harrell asserted he had ample time to review defendant's trial transcripts and "more than one occasion to talk to" defendant. Ultimately, the court denied both motions.

¶ 15 This appeal followed.

¶ 16        II. ANALYSIS

¶ 17 On appeal, defendant argues the trial court improperly addressed his posttrial claim of ineffective assistance of counsel by appointing new counsel to represent him without first

conducting a *Krankel* inquiry into his claim. He contends he indisputably raised a posttrial claim that Morris, his trial counsel, provided ineffective assistance, which should have triggered a *Krankel* inquiry by the court. According to defendant, the court improperly failed to make any inquiry into his claims, and its "appointment of general post[ ]trial counsel" was insufficient to cure its error. Defendant seeks reversal of the court's order denying his motion for a new trial and remand for a proper *Krankel* inquiry.

¶ 18        A defendant's *pro se* posttrial claim of ineffective assistance of counsel is governed by the common-law procedure that developed following the supreme court's decision in *Krankel*. *In re Johnathan T.*, 2022 IL 127222, ¶ 23, 193 N.E.3d 1240. "Th[e] procedure allows the trial court to decide whether independent counsel is necessary to argue a defendant's *pro se* posttrial ineffective assistance claims ***." *Id.* "It is intended to promote consideration of *pro se* ineffective assistance claims in the trial court, to create a record, and to limit issues on appeal." *Id.*

¶ 19        A *Krankel* inquiry is triggered "when a defendant brings a clear claim asserting ineffective assistance of counsel, either orally or in writing." *People v. Ayres*, 2017 IL 120071, ¶ 18, 88 N.E.3d 732. "A *pro se* defendant only has to bring his claim to the trial court's attention." *Johnathan T.*, 2022 IL 127222, ¶ 24.

> "New counsel is not automatically appointed in every case when a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. [Citation.] Rather, when a defendant makes such a claim, the court should first examine the factual basis of the defendant's claim. [Citation.] If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. [Citation.] However, if the allegations show possible neglect of the case, new

counsel should be appointed. [Citation.]

New counsel would then represent the defendant at the hearing on the *pro se* ineffective assistance of counsel claim. Appointed counsel can independently evaluate the claim and avoid the conflict of interest that trial counsel would have in trying to justify his or her own actions contrary to the defendant's position. [Citation.]." *People v. Roddis*, 2020 IL 124352, ¶¶ 35-36, 161 N.E.3d 173.

"Whether the trial court properly conducted a *Krankel* preliminary inquiry presents a legal question that we review *de novo*." *People v. Jackson*, 2020 IL 124112, ¶ 98, 162 N.E.3d 223.

¶ 20 On appeal, defendant relies heavily on two cases—*People v. Reed*, 2018 IL App (1st) 160609, 118 N.E.3d 642, and *People v. Kyles*, 2020 IL App (2d) 180087, 163 N.E.3d 212— to support his claim of error in the underlying proceedings. First, in *Reed*, 2018 IL App (1st) 160609, ¶ 30, the defendant filed a *pro se* posttrial motion raising several ineffective-assistance-of-counsel claims. Based on the defendant's motion, the trial court allowed the defendant's trial counsel to withdraw. *Id.* ¶ 31. The defendant retained private counsel, who filed an amended motion for a new trial. *Id.* Relative to the defendant's ineffective-assistance claims, the new motion alleged only that the defendant " 'was denied the effective assistance of counsel at trial.' " *Id.* At a hearing on the motion, the defendant's new counsel "made no mention of the ineffective assistance claim," and the court denied the motion. *Id.*

¶ 21 On appeal, the defendant argued the trial court improperly "failed to conduct an inquiry into his *pro se* ineffective assistance of counsel claims as required by *Krankel*." *Id.* ¶ 49. The First District agreed, stating it was "evident" that the underlying proceedings "did not properly conform to *Krankel* procedures." *Id.* ¶ 51. The court found the record failed to show an examination into the factual basis for the defendant's *pro se* claims and concluded that "[a]llowing

trial counsel to withdraw and appointing new posttrial defense counsel does not satisfy *Krankel* procedure." *Id.* The court reasoned as follows:

> "Even after new counsel appeared, there is no indication in the record that any inquiry into [the] defendant's ineffective assistance of counsel allegations occurred.
>
> While new counsel did eventually appear on [the] defendant's behalf, there is no indication he was proceeding as *Krankel* counsel. After appearing in the posttrial proceeding, new counsel filed a motion for a new trial, but [the motion] made no specific reference to [the] defendant's ineffective assistance of counsel motion. The motion for a new trial did contain the catch-all allegation that defendant was 'denied effective assistance of counsel during trial.' However, without pointing to a specific action of trial counsel, this allegation, standing alone, was insufficient to prove deficient performance or prejudice. [Citation.] In [a prior case], this court explained the obligations on new counsel appointed during a *Krankel* proceeding. [Citation.] We explained that new *Krankel* counsel must 'independently evaluate the defendant's *pro se* allegations' and 'present those with merit to the trial court during the second-stage adversarial hearing.' [Citation.] If no meritorious claims are found, *Krankel* counsel should withdraw. [Citation.] The record does not show new counsel took any step to fulfill this obligation." *Id.* ¶¶ 51-52.

The First District remanded the matter "for a new first stage *Krankel* hearing," stating that, "[o]n remand, the trial court should engage in a preliminary inquiry as required under the case law." *Id.* ¶ 53.

¶ 22     In *Kyles*, 2020 IL App (2d) 180087, ¶¶ 27-36, the Second District relied on *Reed* to

- 9 -

reach the same conclusion under similar factual circumstances. In that case, the defendant raised ineffective-assistance-of-counsel claims in a *pro se* motion to withdraw his guilty plea and vacate the judgment of conviction and, following the motion, his counsel requested leave to withdraw. *Id.* ¶¶ 15-16. The trial court allowed counsel to withdraw and "appointed the public defender to represent [the] defendant and review his *pro se* motion." *Id.* ¶ 16. A month later, the defendant's new attorney informed the court that the defendant decided not to proceed on his *pro se* motion, and the matter moved forward only on an amended motion to reconsider the defendant's sentence, which was denied. *Id.* ¶¶ 17-18.

¶ 23    On appeal, the defendant argued the trial court improperly failed to inquire into the basis of his ineffective-assistance claims and that his new attorney had also rendered ineffective assistance. *Id.* ¶ 27. The Second District agreed with both contentions. *Id.* In addressing the trial court's compliance with *Krankel* procedures, the reviewing court rejected the State's argument that obtaining new counsel obviates the need for a preliminary *Krankel* inquiry by the trial court. *Id.* ¶ 33. It relied on *Reed* for the proposition "that, if the defendant has made a sufficient *pro se* claim of ineffective assistance and request for new counsel, the general appointment of new counsel does not eliminate the trial court's obligation to make a preliminary inquiry into the merits of the *pro se* claim." *Id.* ¶ 36. It found the preliminary inquiry requirement helped to (1) weed out frivolous claims of ineffective assistance, which promotes judicial economy and (2) avoided the problem in *Reed*, *i.e.*, "the danger that the new attorney will not realize that he or she has a distinctive role as *Krankel* counsel and is not generally appointed to take up where the former attorney left off." (Emphasis omitted.) *Id.*

¶ 24    The Second District found the *Reed* "problem" was also present in the case before it and supported a finding that new counsel had provided ineffective assistance. *Id.* It noted that

"the duty of a *Krankel* attorney is to satisfy both the obligation to represent his client by discerning and presenting nonfrivolous claims and the obligation not to present a frivolous pleading," and that " 'if *Krankel* counsel cannot find even a single nonfrivolous allegation of ineffective assistance of counsel,' he or she must move for leave to withdraw from representing the defendant." *Id.* ¶ 41 (quoting *People v. Downs*, 2017 IL App (2d) 121156-C, ¶ 51, 83 N.E.3d 584). Regarding the case before it, the court further stated as follows:

"[The] defendant's *Krankel* counsel abandoned the ineffective-assistance claims that [the] defendant raised in his *pro se* motion but she did not move to withdraw. *** [T]he only resolution of [the] defendant's *pro se* motion in this case is counsel's statement on the record, and in [the] defendant's presence, that [the] defendant had decided not to proceed on his *pro se* claims. Counsel did not indicate whether she had independently evaluated the *pro se* claims and whether she found any of them to be meritorious. Given that counsel did not move to withdraw, she very well *may* have evaluated the *pro se* claims and found some of them to be meritorious but, upon consultation with and direction from [the] defendant, declined to pursue them. On the other hand, it is possible that counsel did *not* evaluate the *pro se* claims and simply withdrew them, proceeding thereafter consistent with her appointment as new trial counsel. *Because it is not clear from the record whether counsel fulfilled her duty to independently evaluate [the] defendant's pro se claims, we must conclude that counsel failed to act as* Krankel *counsel at all*. As such, prejudice is presumed ***." (Emphases in original and emphasis added.) *Id.* ¶ 46.

¶ 25    Here, like in *Reed* and *Kyles*, the trial court allowed Morris, defendant's trial

counsel, to withdraw after defendant suggested that he had received ineffective assistance of counsel. Specifically, in this case, defendant confirmed with the court that he wanted attorney Morris to withdraw from the case based upon "all the inadequate counsel" he had received. The court also appointed new counsel, attorney Harrell, to represent defendant without conducting an inquiry into the factual basis of defendant's "inadequate counsel" claim. However, the similarities with *Reed* and *Kyles* end there because, in this case, the record shows Harrell was keenly aware that defendant was raising ineffective-assistance claims against Morris and that he independently evaluated defendant's claims, raising 18 of them in an amended posttrial motion.

¶ 26        After Harrell appeared in court on defendant's behalf, he explicitly noted that defendant raised claims that Morris provided ineffective assistance at trial. Harrell asserted his intention to review the trial transcripts, and the possibility that he would file an amended motion for new trial raising such claims. He explicitly noted that he had met with defendant and discussed the issues that defendant wanted to have "in the motion." The trial court and Harrell also discussed the need for a preliminary *Krankel* inquiry. Although the court found such an inquiry unnecessary because Morris was allowed to withdraw and new counsel was appointed, it is clear from the record that Harrell understood both that defendant had ineffective-assistance claims that he wanted to raise and that Harrell could raise "any ineffective assistance of counsel issues that [he felt were] appropriate." The record also shows that Harrell reviewed defendant's trial transcripts and amended defendant's posttrial motion for a new trial to include claims that Morris was ineffective.

¶ 27        We find the present case distinguishable from both *Reed* and *Kyles* in that it does not present the problem identified in those cases—a record devoid of any indication that newly appointed counsel was acting as *Krankel* counsel by independently evaluating the defendant's *pro se* ineffective-assistance allegations and presenting nonfrivolous claims to the trial court. For

the same reasons, we find that any error by the trial court in failing to conduct a preliminary *Krankel* inquiry was harmless. See *People v. Moore*, 207 Ill. 2d 68, 80, 797 N.E.2d 631, 639 (2003) (stating a harmless error analysis could be applied to a claim that the trial court did not follow *Krankel* procedures).

¶ 28        In *Moore*, the defendant raised *pro se* posttrial claims alleging ineffective assistance of counsel and seeking the appointment of alternate counsel. *Id.* at 76-77. "The trial court's sole response to the motion was to appoint the State Appellate Defender as defendant's counsel on appeal." *Id.* at 77. The supreme court found error occurred but also noted that "[a] trial court's failure to appoint new counsel to argue a defendant's *pro se* posttrial motion claiming ineffective assistance of counsel can be harmless beyond a reasonable doubt." *Id.* at 80. Ultimately, in that case, no alternate posttrial counsel was appointed, nor did the record otherwise demonstrate the meritless nature of the defendant's claims. *Id.* Accordingly, the court found it was not possible "to conclude that the trial court's failure to conduct an inquiry into those allegations was harmless beyond a reasonable doubt." *Id.* at 81.

¶ 29        Here, unlike *Moore*, the record shows the trial court appointed attorney Harrell as alternate counsel for defendant. Harrell knew of defendant's ineffective-assistance claims, investigated those claims, and amended defendant's posttrial motion to include several of those claims. As defendant's claims were investigated and presented, any error by the court in not conducting a preliminary *Krankel* inquiry was harmless.

¶ 30        On review, defendant asserts harmless error cannot be applied because Harrell failed to properly support one ineffective-assistance claim he raised on defendant's behalf and entirely failed to raise another claim identified by defendant in the proceedings below. According to defendant, such claims were not refuted by the record and, "[i]n the absence of any *Krankel*

inquiry, it cannot be said with any certainty that Harrell's failures *** were the result of his determination that the claim[s] [were] frivolous." See *People v. Palomera*, 2022 IL App (2d) 200631, ¶ 63, 205 N.E.3d 145 (applying a harmless error analysis to a claim that the trial court improperly failed to conduct a preliminary *Krankel* inquiry on the basis that the defendant's claims had either been raised by new counsel or were refuted by the record). We disagree that, in this case, an evaluation of defendant's underlying *pro se* claims is necessary to support a finding of harmless error.

¶ 31    Despite not conducting a preliminary *Krankel* inquiry, the trial court did appoint new counsel for defendant. Moreover, unlike the cases defendant cites, the record here explicitly demonstrates that Harrell was aware of defendant's ineffective-assistance claims, investigated them, and understood his duty to present to the court the claims that he deemed "appropriate," *i.e.*, nonfrivolous. Thus, defendant received the same benefit he could have received if the court had conducted a preliminary *Krankel* inquiry and determined his allegations showed possible neglect of his case by Morris—the appointment of new counsel to independently evaluate defendant's claims and present them to the court. Under the circumstances presented, any challenge to how Harrell fulfilled his explicitly acknowledged duties is better suited for a claim that Harrell, himself, provided ineffective assistance as *Krankel* counsel, an argument that defendant has not raised on appeal.

¶ 32                                III. CONCLUSION

¶ 33    For the reasons stated, we affirm the trial court's judgment.

¶ 34    Affirmed.